(864 P.2d 228)
No. 68,891

In the Matter of the Estate of HERBERT A. BOLINDER, Deceased.
Petition for review denied 254 Kan. 1007 (1994).

Opinion filed December 3, 1993.

*Kent Oleen*, of Manhattan, for appellant.

*Gary G. Miller*, of Topeka, and *Linda M. Barnes-Pointer*, of Topeka, for appellees.

Before GERNON, P.J., LEWIS, J., and GERALD T. ELLIOTT, District Judge, assigned.

GERNON, J.: This is a will contest in which John D. Bolinder appeals the trial court's ruling which denied admission of Herbert A. Bolinder's will to probate.

Herbert was a 90-year-old man with no children, who lived by himself in Alta Vista. Herbert's nephew, John D. Bolinder, and John's wife, Ilene, helped Herbert with his day-to-day necessities and wants. Herbert died on January 20, 1992. The events of Herbert's last six months are the basis of the challenge to the probate of Herbert's will and, eventually, this appeal.

Herbert was admitted to the VA hospital on August 27, 1991, for an evaluation as to whether he could continue to live inde-

pendently. Although Herbert was hard of hearing and at times forgetful, the staff social worker concluded that he was coherent and competent. Herbert returned home on September 3, 1991.

On September 10, 1991, John and Ilene, ostensibly at Herbert's request, consulted with a Topeka attorney who holds himself out as a specialist in estate planning. Ilene testified that Herbert's personal attorney was not available, so they consulted with the Topeka attorney.

Two days later, Herbert met with Dr. John Dolenz, a clinical psychologist at the VA hospital, to be evaluated again as to his ability to live independently. Dolenz tested Herbert's motor skills and sought to determine his mental capacity. Dolenz testified it was his opinion that Herbert was competent as of September 12, 1991.

Herbert returned home but fell three days later and was returned to the VA hospital. The next day, September 16, Ilene met with the Topeka attorney and asked him to prepare a will for Herbert "as soon as he could and have it signed." Ilene discussed with the attorney how the will should be drawn.

The attorney and his legal assistant took a copy of the will to the hospital on September 20, 1991, and presented it to Herbert.

The attorney testified that he found Herbert alert and oriented but had to shout to be heard during the approximately 20 minutes he discussed the will with Herbert. The attorney testified that Herbert had trouble signing his name, but also testified that Herbert knew that, by signing the will, he was leaving all of his property to John and was excluding all other nieces and nephews. The will was witnessed by two members of the hospital staff and was notarized by the Topeka attorney's legal assistant.

The next day, Ilene contacted Herbert's personal attorney and requested that he prepare a power of attorney for Herbert, giving Ilene the power to conduct his affairs. This request, according to Ilene, was needed because Herbert "felt like he needed one [so] he asked me to get one." Herbert executed the power of attorney.

Ilene then closed out a joint savings account in the name of Herbert and his nephew, Vernon Bolinder. She also changed the names on a certificate of deposit, cashed in another certificate of deposit, and closed out a checking account. The effect of these

transactions was to remove Vernon's name from each of these assets.

After Herbert's death, John presented Herbert's will for probate. His other heirs filed an objection, alleging that Herbert was not competent at the time he executed the will and, further, claiming that John was guilty of undue influence and overreaching. The other heirs also asserted that the sole heir had directed the Topeka attorney how to draft Herbert's will.

The trial court found as follows:

"1. That the Testator, Herbert A. Bolinder, at the time of preparation and execution of The Last Will and Testament in question, was 90 years old, and due to his advanced age, could not hear and intellectually functioned in the borderline range with an I.Q. of the lower 8th percentile. His communication was impaired, he suffered loss in abstract reasoning, and at times, became mentally confused and perseverated.

"2. That The Last Will and Testament in question was prepared at the request of, and on the behalf of, the sole heirs of that Will, and that the [scrivener] thereof had no contact whatsoever with the Testator prior to the execution of the document. Further, the Testator had no independent counsel in the matter.

"3. That incident to the preparation and execution of the Will, the sole heirs engaged in conduct and activities which cast further questions upon the validity of the Will.

"4. The Court finds by clear and convincing evidence that The Last Will and Testament of Herbert A. Bolinder, Deceased, was not prepared or executed while he was in sound mind or memory; further, due to Testator's deteriorated health and confinement for treatment, his dependence upon those around him was, in essence, restraint upon his exercise of free will and rendered him vulnerable to undue influence and overreaching."

John Bolinder appeals.

We must first examine whether the trial court erred in denying the admission of Herbert's will to probate, specifically the finding that Herbert lacked testamentary capacity.

Upon review, this court must examine whether substantial competent evidence exists to support the findings of the trial court and should not reweigh conflicting evidence. *In re Estate of Kern*, 239 Kan. 8, 14, 716 P.2d 528 (1986). Substantial competent evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis in fact from which the issues can reasonably be resolved. "Stated in another way, 'substantial evidence' is such legal and relevant evidence as a rea-

sonable person might accept as being sufficient to support a conclusion." *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988).

The requirements in Kansas for determining testamentary capacity are well settled.

"It is the established rule in Kansas, the deceased possesses testamentary capacity if, on the date he executes the instrument which determines the manner in which the property will be disposed after death, he knows and understands the nature and extent of that property, has an intelligent understanding concerning the disposition he desires to make of it, realizes who his relatives are and the natural objects of his bounty, and comprehends the nature of the claims of those whom he desires to include and exclude in and from participation in his worldly effects after he has no further need for them." *In re Estate of Ziegelmeier*, 224 Kan. 617, 621, 585 P.2d 974 (1978).

See *In re Estate of Raney*, 247 Kan. 359, 367, 799 P.2d 986 (1990). In determining testamentary capacity, the crucial time is when the will is made and executed; evidence concerning the testator's mental capacity before or after that time is only an aid in deciding the primary question. *In re Estate of Barnes*, 218 Kan. 275, 281, 543 P.2d 1004 (1975).

Kansas case law is clear that absolute soundness of mind is not required for testamentary capacity, and chronological age alone is not determinative. *In re Estate of Perkins*, 210 Kan. 619, 626, 504 P.2d 564 (1972).

"The test of a testamentary capacity is not whether a person has capacity to enter into a complex contract or to engage in intricate business transactions nor is absolute soundness of mind the real test of such capacity. The established rule is that one who is able to understand what property he has, how he wants it to go at his death and who are the natural objects of his bounty is competent to make a will even though he may be feeble in mind and decrepit in body." 210 Kan. at 626.

"As long as the requisite mental capacity exists, a person has the power to dispose of the property as he wishes, and this power should not be interfered with by the court." *In re Estate of Raney*, 247 Kan. at 367.

"In an action to avoid a will on the grounds of incapacity of the testator, when it is shown that a will has been executed in accordance with the formalities required by law, the burden is

upon the will contestant and he must produce evidence to support his position." *In re Estate of Perkins,* 210 Kan. at 626.

No argument was made below suggesting that the will failed to contain the requisite formalities. Instead, the trial court found Herbert Bolinder lacked testamentary capacity because he "could not hear and intellectually functioned in the borderline range with an I.Q. of the lower 8th percentile. His communication was impaired, he suffered loss in abstract reasoning and at times, became mentally confused and perseverated."

The trial court evidently based its conclusion on a report written by Dr. Dolenz. Dolenz highlighted Herbert's deafness, his IQ, his age, and his ability to care for himself. Dolenz testified that he tested Herbert for six hours and stated Herbert was mentally competent. Dolenz testified that Herbert's long-term memory retained enough information so that he could recall what property he owned and to whom he wanted to leave it.

John is correct when he asserts that a slight change in the language of Dolenz' report by the trial court in its findings allows a conclusion that Herbert's communication skills were impaired and he suffered a loss in abstract reasoning. What Dolenz' report stated was that Herbert's communication skills were only slightly impaired, with the greatest loss being in abstract reasoning. Dolenz testified: "I found [Herbert] not to have any reading troubles at all on the instruments that I used."

Even if, for the sake of argument, a conclusion were reached by Dolenz that Herbert was not competent on the day he examined him, that was eight days before the will was executed. Our search of the record leads us to conclude that there was no substantial competent evidence from which the trial court could have concluded that Herbert did not understand what property he had, how he wanted it to be given upon his death, and who would be the natural objects of his bounty. The question is not whether Herbert was old and had some physical and other problems age brings, but whether he met the statutory tests of testamentary capacity. This ruling of the trial court is erroneous.

If capacity were the only issue, the will would be admitted. However, the finding by the trial court as to whether Herbert had independent counsel is more bothersome.

The court found that Herbert's will had been "prepared at the request of, and on behalf of, the sole heirs of that Will, and that the [scrivener] thereof had no contact whatsoever with the Testator prior to the execution of the document. Further, the Testator had no independent counsel in the matter." We agree.

K.S.A. 59-605 provides:

"If it shall appear that any will was written or prepared by the sole or principal beneficiary in such will, who, at the time of writing or preparing the same, was the confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator, such will shall not be held to be valid unless it shall affirmatively appear that the testator had read or knew the contents of such will, and had independent advice with reference thereto."

K.S.A. 59-605 "is not to be applied in a technical way to defeat a will, where to do so would defeat the clear intention of the testator." *In re Estate of Robinson*, 231 Kan. 300, 305, 644 P.2d 420 (1982).

In *In re Estate of Robinson*, the Supreme Court closely examined K.S.A. 59-605 and the history of Kansas case law on this issue. The court stated:

"Thus, in order for K.S.A. 59-605 to apply, the opponent of the will must show that the two conditions exist, and if they do exist, the will is to be held invalid unless the proponent of the will shows that the testator read or knew the contents of the will and had independent advice with reference thereto. If the will was not written or prepared by the sole or principal beneficiary, who at the time was the legal adviser or confidential agent of the testator or who occupied at that time any other position of confidence or trust to such testator, then the question of independent advice becomes immaterial." 231 Kan. at 306.

*Robinson* focused on the meaning of the phrase "occupied at the time any other position of confidence or trust to such testator." K.S.A. 59-605; 231 Kan. at 307. The court held that the relationship of husband and wife alone is insufficient to create the kind of relationship required by the statute. The court found, based upon the facts of the case, that the testator was a man of strong will who was not easily influenced and that there was no evidence demonstrating that his wife served as his confidential advisor under the statute. Moreover, the evidence also showed that his wife did not prepare the will: "The mere fact that [the wife] furnished the names of her nephews to be included as

contingent beneficiaries does not establish that the will was either written or prepared by her." 231 Kan. at 309.

In the present case, the court's finding that the will was prepared by the sole beneficiary under the will is supported by substantial competent evidence. While it is undisputed that Herbert requested that a will be prepared on his behalf, John and Ilene were the ones who met with an attorney of their choice, not Herbert's, and discussed the planning of his estate. Herbert had no direct participation in drawing up the will; Ilene related to the Topeka attorney what the will's contents were to be. The Topeka attorney did not speak with Herbert until he went to the VA hospital for Herbert's signature. The first condition under K.S.A. 59-605 was met.

The next question is whether John, as the sole beneficiary, "occupied at the time any other position of confidence or trust to such testator." The trial court did not expressly address this particular question, but, in finding that Herbert had no independent counsel, the court implied that both conditions under the statute had been met.

Substantial competent evidence exists in the record to show that John occupied a position of confidence and trust with Herbert at the time the will was prepared and signed. Herbert, due to his advanced age and deteriorating physical and mental capabilities, was dependent upon John and his wife for many of his daily necessities. Herbert was also dependent upon John and Ilene for transportation to the bank, to the grocery store, and to the hospital for doctor visits. John and Ilene were the only ones who communicated with any attorney about the will. Herbert signed a power of attorney giving Ilene full control over his affairs.

The dilemma for John and Ilene in this case is that the same evidence which they use to support their position that Herbert was not incapacitated, could effectively communicate, and knew what he had and to whom he wanted it to go, weighs against them on the issue of obtaining independent counsel. Quite simply, why not take the Topeka attorney, or whoever, to the VA hospital and allow Herbert to communicate himself?

As both conditions were met for K.S.A. 59-605 to apply, the will must be denied probate as Herbert did not have independent counsel regarding the will's contents.

Finally, we must address the issue as to whether the trial court erred in refusing to grant John's motion to dismiss. John argued that there had not been enough evidence presented to establish that Herbert was incompetent. Given our ruling on the capacity issue, this issue is moot.

Affirmed.