Nos. 83,870
84,246

## IN THE MATTER OF THE ESTATE OF MARIE HANEBERG, DECEASED

(14 P.3d 1088)

Opinion filed December 8, 2000.

*Don W. Noah*, of Noah & Harrison, P.A., of Beloit, argued the cause and was on the brief for appellant Florence Haneberg Briney.

*Philip D. Ridenour*, of Ridenour and Ridenour, of Cimarron, argued the cause and was on the briefs for appellant Arnold Reinert.

*Michael A. Montoya*, of Salina, argued the cause, and *Autumn L. Fox*, of the same firm, was with him on the brief for appellee Tammy Osborne, and *Harry W. Gantenbein*, of Beloit, was with him on the brief for appellee Francis Gronewoller.

The opinion of the court was delivered by:

ABBOTT, J.: This is a consolidated appeal from an order admitting Marie Haneberg's will and codicil to probate. The district court admitted the will and codicil to probate after finding that appellant Arnold Reinert, the decedent's nephew, had failed in his burden of proving "suspicious circumstances" and undue influence by certain will beneficiaries. Appellant Florence Haneberg Briney also appeals the district court's finding that the devise to her twin sister, Francis Haneberg Ervin, lapsed when Francis predeceased Marie.

Marie Haneberg died testate in December 1998. Beneficiaries to her will include various family members, her lawyer Raymond Stein, her banker Francis Gronewoller, and Stein's secretary, Tammy Osborne (formerly Hughes), among others.

Marie and her husband John had no children and no relatives living near them. The Hanebergs did, however, have close personal relationships with Stein, Gronewoller, and Osborne. Stein, an attorney for more than 52 years, was the Hanebergs' attorney for more than 20 years. Gronewoller was the Hanebergs' banker and they visited with him often regarding business and personal matters. Osborne was Stein's legal secretary and she paid the Hanebergs' monthly bills.

The Hanebergs began to discuss the drafting of their wills with Stein in 1988, but it was not until 1991 that they seriously set out to have their wills drafted. One week prior to executing their wills, the Hanebergs approached Gronewoller and told him that they wanted him to be the sole beneficiary of their wills, an offer which he declined. The Hanebergs subsequently showed Gronewoller a list of beneficiaries. Neither of the Hanebergs solicited advice from Gronewoller concerning their wills, nor did Gronewoller attempt to influence them in any way. Gronewoller did advise them, however, to make an appointment with Stein.

On October 7, 1991, Gronewoller received a call from the Hanebergs requesting that he meet with them at Stein's office. Gronewoller was present when Stein discussed the wills with the Hanebergs but he did not participate in any discussion. Less than 1 week later, Stein met with Marie to review her will. Osborne was present when Stein reviewed the will with Marie. Stein read each

provision of the will to Marie and asked her if each provision reflected her intent. Marie replied "yes" to each of the questions. Stein, Osborne, and all witnesses to the execution of the will testified that Marie stated that she understood the provisions of the will and that she wished to adopt the will as a final expression of her intent to dispose of her estate. The contested portion of Marie's will concerns gifts to Stein, Gronewoller, and Osborne. The pertinent part read:

"FOURTH: I direct that all of my personal property shall be converted into cash by my Executor, hereinafter named, and that said money derived therefrom shall be divided as follows, to-wit:

"A) To my brother, Lawrence Reinert, 25%.

"B) To the St. Boniface Catholic Church Memorial Trust Fund, Tipton, Kansas, 25%.

"C) *To my friend and advisor, Francis Gronewoller, 15%.*

"D) *To my friend and advisor, Raymond E. Stein, 15%.*

"E) *To my friend and legal aid, Tammy Hughes* [now Osborne], 5%.

"F) To the St. John the Baptist Catholic Church Ladies Guild, 5%.

"G) *To the Knights of Columbus, Beloit, Kansas, 5%.*

"H) To the Mitchell County Community Hospital, (Board of Directors), 5%."
(Emphasis added.)

The personal property in Marie's estate had an approximate value of $475,000. Marie's brother, Lawrence Reinert, predeceased Marie. Appellant Arnold Reinert is the son of Lawrence Reinert and is Marie's nephew. Marie's only heirs at law are the seven children of Lawrence Reinert.

In December 1992, the Hanebergs met with Stein to prepare codicils to their wills. The execution of the codicils and the attestations were done in the same manner as the execution of the Hanebergs' wills. All witnesses to the execution of Marie's codicil testified that she stated she understood the provisions of the codicil. Marie's codicil deleted paragraph THIRD of her will and replaced it with the following:

"THIRD: I hereby give, devise and bequeath all of the real estate which I may own individually or as tenants in common at the time of my death to the following named persons and charitable organizations, as hereinafter set forth, to-wit:

"To my sisters-in-law, *Florence Haneberg-Briney*, and *Francis Haneberg-Ervin*, absolutely:

"All my undivided interest in the Southeast One-fourth (SE¼) of the Northeast One-fourth (NE¼) and the East One-half (E½) of the South-east One-fourth (SE¼) all in Section Thirty-two (32), Township Eight (8) South, Range Eleven (11) West of the 6th P.M., Osborne County, Kansas." (Emphasis added.)

Marie also bequeathed in her codicil several other pieces of real estate owned by her at the time to individuals, with the exception of one gift made to the St. John the Baptist Catholic Church Memorial Trust Fund. The only gift made to two persons jointly was the real estate bequeathed to Marie's sisters-in-law, Francis and Florence. Marie also set forth what was to happen in the event any of the beneficiaries predeceased her, stating in her codicil:

"Should any of the above named persons be not living at the time of my death, then in that event, I direct that the real estate they would have received shall be placed in the *residue of my estate.*" (Emphasis added.)

Marie did not have a residuary clause in either her will or her codicil.

John predeceased Marie. His will left Stein $68,000 from his estate and Gronewoller approximately $69,500. Gronewoller also received $10,000 for serving as the executor of the estate. As a result of receiving a gift from John's estate, Stein was informally admonished by the Disciplinary Administrator's office. He was not required to refund his gift.

Marie died testate on December 11, 1998, in Beloit, Kansas. Stein has disclaimed the approximately $80,000 he would have received from Marie's will. Reinert contested the will, arguing that there were "suspicious circumstances" and that Marie was subjected to "undue influence" by Stein, Gronewoller, and Osborne. Briney also argued that she should take the real estate left to her and Francis even though Francis had predeceased Marie.

Judge Thomas M. Tuggle, in addressing the issues raised by Reinert, stated:

"The nine types of conduct cited by the contestant [Reinert] as suspicious circumstances do not, in the court's opinion, amount to suspicious circumstances which would, together with fiduciary relationships between Marie and Stein and Gronewoller shift the burden of proof of proving the lack of undue influence to the proponents of the will even though Stein committed an ethical violation in naming himself as a legatee in the will; this error did not affect Marie's intent.

The bequest to Stein, which has now been disclaimed, can be excised with the property passing to the remaining surviving legatees consistent with Marie's intentions. Gronewoller was simply a banker and friend who listened to John and Marie and did things they requested. It made sense that John and Marie would want their friend Gronewoller to accompany them to Stein's office to make their wills, something obviously important to them. Any statements which Gronewoller may have made to Marie's relatives concerning Marie's will or estate was made long after the will was executed. Further, the statements, if true, are inconsequential given the totality of the evidence presented. The fact that Stein and Gronewoller had not been previously included as beneficiaries under testamentary instruments has no probative value.

"Stein's belief that there was nothing wrong in making himself a beneficiary under the will shows a serious lack of awareness of the ethical responsibility of an attorney to his client under the rules of ethics in effect at the time the will and codicil were drawn (Model Rules of Professional Conduct, Rule 1.8[c].) This lack of understanding is particularly troublesome because Stein has basically a probate and income tax preparation practice. In plain English, it boggles the mind to think that a practitioner would do something like this. Stein testified he has practiced law for over 50 years. In addition to his law practice, Stein testified he owns 4,000 acres of farmland, an occupation in which he is actively engaged. Under the circumstances, it appears to the court that it is time for Stein to take down his shingle and devote full-time to his farming."

Judge Tuggle also ruled that Reinert was not entitled to any attorney fees from the estate.

Reinert timely appealed from the August 19, 1999, order of the court.

On August 31, 1999, Florence Haneberg Briney filed a motion to alter and amend the judgment, seeking a determination of whether paragraph THIRD of the codicil entitled her to the bequest set forth or whether the gift "lapsed." On October 1, 1999, Judge Tuggle found that the gift to Francis had lapsed. Judge Tuggle stated that "there is no residuary clause in the Will or Codicil, and the devise to Florence and Francis may not be construed as a devise to a class. Thus, the devise to Francis lapses and will be distributed to Marie Haneberg's heirs at law." Florence timely appealed from the decisions of the district court.

Reinert filed a motion to transfer to the Supreme Court pursuant to K.S.A. 20-3017 and Supreme Court Rule 8.02 (1999 Kan. Ct. R. Annot. 53), which this court granted.

Reinert's appeal and Florence's appeal, which were before the Court of Appeals, were consolidated pursuant to Supreme Court Rule 2.06 (1999 Kan. Ct. R. Annot. 19).

## I. FLORENCE HANEBERG BRINEY ISSUE

Florence argues that the district court erred in determining that the devise to her lapsed upon the death of Francis Haneberg Ervin.

An appellate court's review of the construction of a will and codicil entered on undisputed facts is unlimited. An appellate court is not bound by the determination of the trial court. *In re Estate of Sanders*, 261 Kan. 176, 181, 929 P.2d 153 (1996); *In re Estate of Cline*, 258 Kan. 196, 199, 898 P.2d 643 (1995).

In considering a will, a court cannot begin by inferring a testator's intention and then construe the will to give effect to such intention, however probable it may be, nor can it rewrite the will in whole or in part to conform to such presumed intention. It is the duty of a court to construe, not to construct, a will. *Sanders*, 261 Kan. at 182.

Where a court is called upon to determine the force and effect to be given terms of a will, the court's first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require employment of rules of judicial construction to determine its force and effect. *In re Estate of Wernet*, 226 Kan. 97, Syl. ¶ 1, 596 P.2d 137 (1979); *In re Estate of Mildrexter*, 25 Kan. App. 2d 834, 836, 971 P.2d 758 (1999).

Where the language of a will is clear, definite, and unambiguous, the court should not consider rules of judicial construction to determine the intent of the testator. *Sanders*, 261 Kan. at 182; *Wernet*, 226 Kan. 97, Syl. ¶ 2.

The critical test in determining whether a will is ambiguous is whether the intention of the testator can be gathered from the four corners of the instrument itself. If so, ambiguity does not exist. If the testator's intent can be ascertained, neither rules of construction nor extrinsic evidence should be allowed to vary the clear intent expressed on the face of the instrument. *Mildrexter*, 25 Kan. App. 2d at 836.

In the interpretation of wills, the primary function of the court is to ascertain the testator's intent from the four corners of the will and to carry out that intent if possible and if not contrary to law or public policy. *Wernet*, 226 Kan. 97, Syl. ¶ 3; *In re Estate of Hauck*, 170 Kan. 116, 120, 223 P.2d 707 (1950).

Florence argues that the gift in paragraph THIRD was a devise to a class and, as such, the gift could not lapse and should not pass by intestacy to the heirs of Marie.

The gift of real estate in paragraph THIRD was intended to go to "Florence Haneberg-Briney, and Francis Haneberg-Ervin absolutely," but the codicil states "[s]hould any of the above named persons be not living at the time" of Marie's death, the real estate should go to the "residue of my estate." Francis predeceased Marie. As previously noted, the will and codicil did not contain a residuary clause. In *In re Estate of Stroble*, 6 Kan. App. 2d 955, 961, 636 P.2d 236 (1981) *rev. denied* 230 Kan. 818 (1982), the Court of Appeals discussed what happens when a gift lapses, stating:

"(5) Where a bequest lapses because of the death of the beneficiary prior to that of the testator, the lapsed devise falls into the residuum and will be disposed of by the residuary clause, if one has been provided for in the will. [Citations omitted.]

"(6) Where a bequest lapses because of the death of the beneficiary prior to that of the testator, and there is no residuary clause in the will, the property subject to the lapsed bequest passes under the law of descent and distribution as intestate property. [Citations omitted.]"

A gift to a class is one made to a group capable of future change in number and is not a gift to the group as specific individuals but to them as members of a fluctuating group. *In re Estate of Hannah*, 215 Kan. 892, 897, 529 P.2d 154 (1974). In *Hannah*, this court discussed the factors to be evaluated when considering whether a gift is to a class:

"In the cases that we have examined certain features of each instrument under consideration seem to bear special significance in resolving the question. The designation of beneficiaries by name militates against a gift to a class [citations omitted] while designation by a degree of blood relationship may indicated a gift to a class [citation omitted]. The transfer of interests or shares of a set percentage or dollar amount militates against a gift to a class [citation omitted] while a transfer of a share to a group capable of future change in number with a corresponding

change in the amount of the respective shares or interests may strongly indicate a gift to a class. [Citation omitted.] . . .

"Additional indicators of an intention to make a gift to a class may be found by looking at the general scheme of disposition, at matters of personal relationship such as intimacy or hostility toward the beneficiaries, at the expressed purpose of excluding or limiting participation to those named, at the presence or absence of a natural class, at the presence or absence of a gift over, and at a recognition in the particular jurisdiction of a general presumption against a construction which would result in partial intestacy. [Citations omitted.]" 215 Kan. at 898.

See also *Bradley v. Estate of Jackson*, 1 Kan. App. 2d 695, 697-98, 573 P.2d 628 (1977) (noting that when the testator designates the beneficiaries by name, the evidence is "persuasive" that the testator intended a gift to the individuals and not as a class gift).

In the present case, Marie left real estate to Florence and Francis "absolutely." The gift to the two sisters-in-law was a gift to them as individuals and not as a class. The codicil is not ambiguous, and there is no evidence that the gift was intended to be a class gift. Marie's will specifically mentions Florence and Francis by name. The gift of real estate to Florence and Francis is for a fixed portion of real estate which will not change. The general scheme of the dispositions in paragraph THIRD indicates that the bequests are to go to individuals and are not class gifts. Florence and Francis, by themselves, do not constitute a natural class.

This is not a situation like the one in *In re Estate of Randall*, 185 Kan. 92, 340 P.2d 885 (1959), where there was evidence in the will itself that the testator intended the gift to the named beneficiaries to be a class gift. Nor is this a case like the one in *In re Estate of Hannah*, 215 Kan. 892, where the will specifically allowed for a future increase in the number of beneficiaries. The district court did not err in finding that the gift to Florence and Francis was a gift to them as individuals as tenants in common and that the gift to Francis lapsed upon her death. The anti-lapse statute found at K.S.A. 59-615 does not apply. The gift to Francis passes by intestacy.

## II. ARNOLD REINERT ISSUES

Reinert argues that the district court erred when it found that

he had not met his burden of proof in showing that there was undue influence or "suspicious circumstances."

When reviewing the district court's findings, this court must determine whether substantial competent evidence exists to support the court's findings and will not re-weigh conflicting evidence. See *In re Estate of Bolinder*, 19 Kan. App. 2d 72, 74, 864 P.2d 228, *rev. denied* 254 Kan. 1007 (1994).

The district court found that Reinert had failed to establish that Marie was under undue influence when she made her will. The district court's finding was a negative finding. A negative finding means the party with the burden of proof failed to meet that burden. *Mohr v. State Bank of Stanley*, 244 Kan. 555, 567-68, 770 P.2d 466 (1989). An appellate court will not disturb such a finding absent proof of an arbitrary disregard of undisputed evidence or some extrinsic circumstance such as bias, passion, or prejudice. *Duncan v. City of Osage City*, 13 Kan. App. 2d 364, 369, 770 P.2d 843, *rev. denied* 245 Kan. 783 (1989).

It is well established in Kansas that once it has been shown that a will has been executed in accordance with the formalities required by the law, the burden is upon the will contestant and he or she must produce evidence to support his position. *In re Estate of Perkins*, 210 Kan. 619, 626, 504 P.2d 564 (1972); see also *In re Estate of Brown*, 230 Kan. 726, 731, 640 P.2d 1250 (1982) (noting that the burden of proof is on the party arguing that there was undue influence in the making of the will); *In re Estate of Ziegelmeier*, 224 Kan. 617, 622, 585 P.2d 974 (1978) (the burden of proof is on the contestant claiming that undue influence was exerted over the testator). The will contestant must overcome the burden of proof by clear, satisfactory, and convincing evidence. *In re Estate of Bennett*, 19 Kan. App. 2d 154, 165, 865 P.2d 1062 (1993) *rev. denied* 254 Kan. 1007 (1994).

"Power, opportunity, and purpose to exercise undue influence, or possibility, conjecture, surmise and suspicion that undue influence has induced a will, alone cannot authorize the inference that such influence has in fact been exercised." *In re Estate of Millar*, 167 Kan. 455, 465, 207 P.2d 483 (1949). Undue influence must "amount to such coercion, compulsion and restraint as to destroy

the testator's free agency, and by overcoming his power of resistance, obliges or causes him to adopt the will of another rather than exercise his own." *In re Estate of Hall*, 165 Kan. 465, 470, 195 P.2d 612 (1948); see *In re Estate of Carothers*, 220 Kan. 437, 443, 552 P.2d 1354 (1976); *Heck v. Archer*, 23 Kan. App. 2d 57, 62, 927 P.2d 495 (1996). "Human desire, motive and opportunity to exercise such influence will not alone authorize the inference that undue influence was in fact exercised. Neither will suspicion or the possibility of their having induced the making of the will favorable to them be enough to justify a finding of undue influence." *Klose v. Collins*, 137 Kan. 321, 326, 20 P.2d 494 (1933). Legitimate influence is not improper. Influence obtained by kindness and affection will not be regarded as undue. *Ziegelmeier*, 224 Kan. at 622. Undue influence, in order to overcome a testamentary act, must directly affect the testamentary act itself. *Bennett*, 19 Kan. App. 2d at 163.

A two-prong test is utilized to determine whether undue influence was exerted over the decedent. *Bennett*, 19 Kan. App. 2d at 165. Under the first prong of the *Bennett* test, it must be shown that the person who is alleged to have exerted the undue influence was in a confidential and fiduciary relationship with the decedent. Under the second prong, it must be shown that there were "suspicious circumstances" which surrounded the making of the will. If a will contestant can show that there are suspicious circumstances by clear, satisfactory, and convincing evidence, a presumption that the undue influence was exerted on the testator will arise. The burden of proof will shift back to the will proponent if a will contestant can prove that there were suspicious circumstances surrounding the making of the will. *Bennett*, 19 Kan. App. 2d at 165, 169.

The first prong of the *Bennett* undue influence test requires the will contestant to show that the testator was in a confidential or fiduciary relationship with the testator at the time the will or codicil was executed.

Kansas appellate courts have been reluctant to provide an express definition of "confidential relationship" and have, instead, preferred to decide each set of facts on a case-by-case basis. "Fi-

duciary relation" refers to any " 'relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party.' " *In re Estate of Brodbeck*, 22 Kan. App. 2d 229, 237, 915 P.2d 145, *rev. denied* 260 Kan. 993 (1996) (quoting *Brown v. Foulks*, 232 Kan. 424, 430-31, 657 P.2d 501 [1983]).

There is no question that the first prong was met in this case. Stein, Gronewoller, and Osborne were all in a position of trust and confidence with Marie and had the opportunity to exercise influence over her.

The second prong of the *Bennett* undue influence test requires the will contestant to show that there were "suspicious circumstances" surrounding the making of the will or codicil.

In *Bennett*, the Court of Appeals discussed the meaning of "suspicious circumstances" and stated:

"We have no Kansas decisions defining the term 'suspicious circumstances.' We think the absence of a specific definition of that term is wise and appropriate. What may appear as 'suspicious' under one set of facts may be considered normal under another. For instance, ordinarily it would be considered suspicious for a testator or testatrix to disinherit his or her natural born children and leave the estate to others. Although this would be considered suspicious in most cases, there are certainly factual circumstances where such a disposition would be expected and not at all suspicious. It may ordinarily be 'suspicious' to omit any provisions for family members and leave the estate to charity. However, there are factual circumstances in which this is not suspicious and may be normal and expected. Our Supreme Court has indicated in *Brown v. Foulks*, 232 Kan. 424, Syl. ¶ 2 [697 P.2d 501 (1983)], that it would not state an exact definition of a confidential or fiduciary relationship. Its reasoning was that the existence of that relationship depends upon the facts and circumstances of each individual case. For the same reason, we decline to state a definition of the term 'suspicious circumstances.' The question of whether suspicious circumstances exist must necessarily depend on the facts and circumstances of each individual case.

"The question of whether suspicious circumstances exist is a question of fact to be determined on a case-by-case basis in the light of the factual background presented." 19 Kan. App. 2d at 170.

See also *Heck*, 23 Kan. App. 2d at 63 (noting that there is no "laundry list or exact definition" of suspicious circumstances).

In the present case, Reinert alleges the following as "suspicious circumstances" in relation to the bequest made to Stein:

"a. Raymond E. Stein did not charge for his services in consulting with Marie Haneberg for many years before and after he wrote her will and codicil.
"b. It is unusual in the legal profession for clients to leave large bequests to their attorneys.
"c. Marie Haneberg did not receive independent advice from any other attorney regarding the bequest to Raymond E. Stein.
"d. The Model Rules of Professional Conduct (Now the Kansas Rules of Professional Conduct) prohibit an attorney from writing a will for an unrelated party in which the attorney is given a gift.
"e. The mandatory or forced lapse language of paragraph FOURTH of the will could only pertain to the bequest of the brother of Marie Haneberg, to the benefit of Raymond E. Stein.
"f. As a result of the mandatory lapse clause of paragraph FOURTH of the will, Marie Haneberg left nothing to any of her family."

Reinert alleges the following as "suspicious circumstances" in relation to the bequest made to Gronewoller:

"a. Marie Haneberg consulted with Francis Gronewoller about her will and how to leave her estate.
"b. In the banking community, it is not customary for bank customers to leave large bequests to their bankers.
"c. Marie Haneberg trusted and reposed great confidence in Francis Gronewoller as evidenced by her naming of him as her executor.
"d. Marie Haneberg trusted and reposed great confidence in Francis Gronewoller as evidenced by her naming him as her attorney-in-fact under power of attorney.
"e. Francis Gronewoller was present in the room when Marie Haneberg discussed her will with her attorney but did not accompany her on any other visits to her attorney.
"f. After Marie Haneberg became incapacitated and incompetent, Francis Gronewoller continued to operate under a non-durable power of attorney in which he was named as the attorney-in-fact for Marie Haneberg.
"g. Francis Gronewoller told Arnold Reinert as he went to visit his aunt, 'It is too late for her to change her will now.'
"h. Francis Gronewoller told certain people, 'I earned it' in referring to the bequest he received under the will of Marie Haneberg's predeceased husband.
"i. Francis Gronewoller repeatedly told Marie Haneberg how expensive it was and how much it cost him to put his children through college."

Reinert alleges the following as "suspicious circumstances" in relation to the bequest made to Stein and Gronewoller:

"a. At the time she signed her will, Marie Haneberg was a person of limited formal education.
"b. At the time she signed her will, Marie Haneberg had never previously had any will and was unsophisticated in legal matters.
"c. At the time she signed her will, Marie Haneberg was very elderly and a childless person."

As described earlier, the district court found that the alleged suspicious circumstances raised by Reinert did not "amount to suspicious circumstances" and that Reinert had not met the burden of proof in attempting to show that Marie was under undue influence when she executed the will and subsequent codicil.

We hold the district court did not err in finding that the facts as alleged by Reinert were not suspicious circumstances. Although Reinert correctly notes that it was improper for Stein to include himself as a beneficiary in the will, that alone does not invalidate the will. Certainly it was irregular for Osborne to be present when Marie executed her will and codicil, but her presence, given the particular facts of this case, does not rise to the level of "suspicious circumstances."

Additionally, there is no evidence on the record that Marie was coerced or that anyone exercised such compulsion and restraint as to destroy her free agency. There is no evidence that Marie, when executing her will and subsequent codicil, adopted the will of another rather than exercising her own. In fact, the testimony indicates that both John and Marie were strong-willed people and that they were not susceptible to the influence of others. When discussing Marie's intent, Reinert admitted that he had no evidence to show that she did not intend for the gifts to go to Stein, Gronewoller, and Osborne.

Based on the record before us, this court will not disturb the negative finding of the district court. The district court did not arbitrarily disregard the undisputed evidence, and the record reflects no bias or prejudice.

Reinert also argues that the whole will and codicil should be void as a matter of public policy because Stein not only prepared the

will but was a beneficiary under the will. This argument is without merit. Stein has disclaimed any gifts he was to receive under Marie's will. When confronted with a gift under a will which violates public policy, such as the gift to Stein, the better policy is to void that particular gift instead of voiding the entire will. Stein has disclaimed his bequest. The remainder of the will and codicil do not violate public policy.

The general rule is that parts of a will may be held valid despite part of the will being held invalid as a product of undue influence. Various courts have stated that the key inquiry is whether the testator would have intended the entire will to fail because of invalidation of various parts of the will. In other words, the general rule is that if the parts affected are separable so that the will remains intelligible, the will will be upheld and the invalid parts deleted. See *Holmes v. Campbell College*, 87 Kan. 597, 125 Pac. 25 (1912); *Williams v. Crickman*, 81 Ill. 2d 105, 115, 405 N.E.2d 799 (1980); *Moore v. Smith*, 321 Md. 347, 361, 582 A.2d 1237 (1990); 79 Am. Jur. 2d, Wills § 397, p. 555.

It does not make sense from a legal standpoint to invalidate a will in its entirety which would have the result in this case of disinheriting all the devisees and legatees who had nothing to do with the drafting and execution of the will because of the improper conduct of the attorney who drafted the will. It makes more sense to carry out the intent and desire of the testator insofar as possible and, in this case, it is possible to do so.

### III. ATTORNEY FEES

Reinert next argues that the district court should not have ruled on the issue of attorney fees as he had not yet raised it and it was not part of the pretrial order. We believe the district court, when it denied the attorney fees, was merely referencing K.S.A. 59-1504, which requires a party to be successful in opposing the probate of a will or codicil in order to receive attorney fees. Since the district court ruled against Reinert in finding that there were no suspicious circumstances, the court also noted that Reinert was not entitled to attorney fees since his will contest was not successful. See *In re Trusteeship of the Will of Daniels*, 247 Kan. 349, Syl. ¶ 6, 799 P.2d

479 (1990) (noting that beneficiary must be successful in defending, prosecuting, or opposing a will in order to recover attorney fees); *Mildrexter*, 25 Kan. App. 2d at 839 (noting that will contestant must be successful in order to be awarded attorney fees). If the appellant is successful on the remaining issues, the question of attorney fees as to those issues remain viable.

Affirmed as to the district court's ruling that the gift to Francis lapsed upon her death. Affirmed as to the district court's ruling that appellant Reinert failed to meet his burden of proof in attempting to show that there was undue influence.

SIX, J., not participating.

CAROL A. BEIER, J., assigned.