No. 127,546

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
LARRY FRANKLIN HOLDERMAN.

SYLLABUS BY THE COURT

1.

Appellate courts have unlimited review of the construction of a will and codicil entered on undisputed facts and are not bound by the determination of the district court.

2.

It is the court's duty to construe, not construct, a will. The court cannot infer the testator's intent and construe the will to give effect to the inferred intent, nor can the court rewrite the will in whole or in part to conform to such presumed intention.

3.

Where the language of a will is clear, definite, and unambiguous, the court should not consider rules of judicial construction to determine the intent of the testator.

4.

Under K.S.A. 59-615, the anti-lapse statute, courts look at the lineal descendants of the party who would have taken the estate had they not predeceased the testator.

5.

Disinherited heirs are treated as being deceased for purposes of passing the estate to the issue of the disinherited heirs, so long as the clear language of the will does not also disinherit such issue.

1

6.

Attorney fees and expenses may not be allowed against the estate of a decedent unless authorized by statute.

7.

K.S.A. 59-1717 allows every fiduciary his or her necessary expenses incurred in the execution of his or her trust, and the fiduciary shall have such compensation for services and those of his or her attorney as shall be just and reasonable.

Appeal from Butler District Court; DAVID A. RICKE, judge. Submitted without oral argument. Opinion filed September 5, 2025. Affirmed.

*Douglas C. Cranmer* and *Cinthia Terrazas*, of Stinson, Laswell & Wilson, L.C., of Wichita, for appellants Frank Bly and Ezme Pearl.

*Trent H. Wetta* and *Ashley Jarmer*, of Hinkle Law Firm LLC, of Wichita, for appellee Judy K. Sullivan, and *Joy K. Williams*, of Joy K. Williams, Attorney at Law, of Wichita, for appellee Susan Davenport.

*Russell L. Mills*, of Russell L. Mills, Attorney at Law, of Derby, for appellee Mandelin Holderman.

Before ISHERWOOD, P.J., SCHROEDER and PICKERING, JJ.

SCHROEDER, J.: Larry Franklin Holderman died testate, leaving his estate to his parents, who predeceased him. Larry expressly disinherited his two children from his will. The district court found the anti-lapse statute, K.S.A. 59-615, applied and the estate should be distributed to Larry's parents' lineal descendants, except for the disinherited children. Larry's children timely appeal claiming Larry's will lapsed, the anti-lapse statute did not apply to the facts of this case, and they should inherit the entire estate through intestate succession. After careful review, we find the anti-lapse statute applies and the

estate should be distributed to the lineal descendants of Larry's parents, excluding Larry's children. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Larry died testate on April 22, 2022. Larry's Last Will and Testament, dated August 20, 1999, named his parents, Franklin Pierce Holderman and Clara Lodema Holderman, as the sole beneficiaries of his estate. Larry's will specifically stated: "I am aware that I have two children, namely Teri Robertson and Frank Bly, and IT IS MY WILL that neither child inherit under my Will." At some point, Robertson's name became Ezme Pearl. Franklin died in 2002, and Clara died in 2007.

In September 2022, Judy K. Sullivan, one of Larry's creditors, filed a petition for probate of will and issuance of letters of administration C.T.A. The district court admitted Larry's will to probate and appointed Sullivan as administrator C.T.A. Sullivan later filed the estate's inventory and valuation.

In May 2023, Mandelin Holderman, Larry's niece, filed a petition to interpret will and determine heirs. Mandelin explained Larry's parents lived with Larry until their deaths and, knowing his parents died, Larry did not revoke or amend his will naming them as beneficiaries of his estate. Mandelin claimed, under the anti-lapse statute—K.S.A. 59-615—Franklin and Clara's heirs became the beneficiaries of Larry's estate as Franklin and Clara were the original intended beneficiaries. As such, Mandelin asserted she was an heir as a granddaughter of Franklin and Clara, and her father—Franklin and Clara's son—was deceased. Mandelin argued that Larry's disinheritance of his children likewise meant Larry disinherited his daughter Pearl's children—his grandchildren— increasing Mandelin's share of the estate. Mandelin claimed she may be the sole heir of the estate unless Susan Davenport could prove Johnnie Kennon—Clara's son and Larry's half-brother—was her father.

3

Bly and Pearl responded to Mandelin's petition to interpret will and determine heirs, arguing Larry unsuccessfully attempted to disinherit them. Bly and Pearl suggested Larry's gift to his parents lapsed and, because the will contained no residuary clause, the estate should solely pass to them through intestate succession.

Davenport also filed an answer to Mandelin's petition to interpret will and determine heirs. Davenport agreed with Mandelin that (1) the anti-lapse statute applied, (2) Larry explicitly disinherited his children, and (3) she and Mandelin were the remaining issue entitled to inherit Larry's estate.

At the hearing on Mandelin's petition, the district court heard arguments from Mandelin, Bly and Pearl, Davenport, and Sullivan. Sullivan suggested Pearl's children—Larry's grandchildren—would still inherit under the anti-lapse statute as Larry's will did not expressly disinherit all lineal descendants from the disinherited children. The district court continued the hearing and ordered the parties to brief whether Pearl's children would inherit a share of the estate under the anti-lapse statute.

Mandelin filed an objection to Pearl's children inheriting Larry's assets, claiming Pearl's disinheritance meant her children—Larry's grandchildren—were also disinherited. Mandelin relied on authority from other jurisdictions to support her unsubstantiated claim that Larry's children were no longer issue of the deceased or the issue of the beneficiaries to Larry's will because they were eventually adopted by another man. Mandelin argued (1) Pearl's children failed to appear or otherwise plead in the case and asserted no claim to Larry's assets, therefore waiving their interest in the estate; and (2) because Pearl was still alive and was disinherited, the lineal descent stops, and Larry's grandchildren receive nothing. Mandelin also submitted that Davenport should not inherit any of Larry's assets because she failed to establish she was a lineal descendant of Franklin and Clara—Larry's parents—and Larry could not have foreseen that Davenport was related to him in any way.

4

At the next hearing, the district court found the anti-lapse statute applied. The district court explained that Bly and Pearl were "specifically, clearly, and unequivocally disinherited in this will" and a disinherited individual is treated as predeceased for purposes of determining issue under the anti-lapse statute. Larry expressed no intent to disinherit his grandchildren—Pearl's children—and Pearl's four adult children would each take per stirpes the share that would have been split between Bly and Pearl. The district court noted the four grandchildren did not enter appearances but found: "No beneficiary of an estate in Kansas is required to appear or assert [a] claim under the will or applicable statutory distribution" to receive what he or she is entitled under the will or by statute. The district court also found Mandelin was entitled to a share of the estate under the anti-lapse statute and, if Davenport could prove paternity, she too was entitled to a share of the estate. Litigation continued to determine if Davenport was a lineal descendant of Franklin and Clara; the parties eventually agreed she was Clara's granddaughter.

Bly and Pearl timely filed a petition to alter or amend judgment, asking the district court to find Larry did not successfully disinherit them and his estate should pass solely to them. The district court denied Bly and Pearl's petition.

ANALYSIS

Bly and Pearl contend the anti-lapse statute does not apply to these facts because the decedent—their father—failed to successfully disinherit them. Bly and Pearl specifically claim that "when a will lacks a residuary clause and the named beneficiaries predecease the testator, any attempted disinheritance is ineffective, and the estate must pass by intestate succession." Bly and Pearl heavily rely on *In re Estate of Stroble*, 6 Kan. App. 2d 955, 636 P.2d 236 (1981), and *In re Estate of Haneberg*, 270 Kan. 365, 14 P.3d 1088 (2000), to support their position.

5

We have unlimited review of "the construction of a will and codicil entered on undisputed facts" and we are "not bound by the determination of the [district] court." 270 Kan. at 371.

"At common law a gift to a legatee or devisee who died before the testator lapsed. . . . Anti-lapse statutes soon evolved to temper application of the common-law rule." *In re Estate of Thompson*, 213 Kan. 704, 705-06, 518 P.2d 393 (1974). The anti-lapse statute here, K.S.A. 59-615, states:

"(a) If a devise or bequest is made to a spouse or to any relative by lineal descent or within the sixth degree, whether by blood or adoption, and such spouse or relative dies before the testator, leaving issue who survive the testator, such issue shall take the same estate which said devisee or legatee would have taken if he or she had survived, unless a different disposition is made or required by the will.

"(b) As used in this section or as used in any will executed on or after July 1, 1973, unless the provisions of such will specifically provide to the contrary, the term 'issue' means offspring, progeny or lineal descendants, by blood or adoption, in whatever degree."

In *In re Estate of Stroble*, the decedent died testate, and her will was admitted to probate. The sole heir at law was the decedent's surviving spouse, but the decedent's will "expressly direct[ed] that the provisions of [the] Will shall operate to the exclusion of my husband." 6 Kan. App. 2d at 956. Rather, the decedent wanted her mother to take all her real and personal property as her sole heir *if* her mother survived her by 30 days. The decedent and her mother died simultaneously from carbon monoxide poisoning.

The decedent's husband argued he should inherit the estate as the surviving spouse by intestate succession, not under the will. The *Stroble* panel found the bequest lapsed because the will had an express condition—the decedent's mother survive her by 30

6

days—and there was no alternative beneficiary named in the residuary clause of the will if such condition was not met, making the will ineffective. The surviving spouse, therefore, inherited the entire estate through intestate succession. 6 Kan. App. 2d at 961. The panel explained: "The general rule . . . is that the fact that a person is disinherited by the will does not prevent his sharing, as an heir at law, in property the testamentary disposition of which has failed by lapse." 6 Kan. App. 2d at 962. The panel further noted that "a testator cannot disinherit his heirs by words alone, but in order to do so the property must be given to somebody else." 6 Kan. App. 2d at 962.

While *Stroble* is legally and factually distinguishable from this case, "one panel of the Court of Appeals may disagree with a previous panel of the same court." *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018). Even if we follow the *Stroble* panel, Larry's will was unambiguous in that it was his intent to unconditionally pass his estate to his parents, whereas in *Stroble*, the express condition was not satisfied as the only named beneficiary failed to survive the decedent by 30 days and there was no alternative beneficiary named in the residuary clause of the will. Here, there was no condition for Larry's parents to survive him. In other words, when the express condition was not satisfied in *Stroble*, it was unknown who the decedent intended to receive the estate. Here, Larry likely considered the fact his parents could—and did—predecease him and did not put a condition on his parents receiving the estate. And, while Larry had no residuary clause in his will, he did more than disinherit his children by words alone. Larry directed his estate to go to his parents.

In *In re Estate of Haneberg*, Marie Haneberg died testate with no children. Haneberg's codicil to her will gifted, devised, and bequeathed some of her real estate to her two sisters-in-law jointly and absolutely. The codicil to Haneberg's will also stated: "'Should any of the above named persons be not living at the time of my death, . . . the real estate . . . shall be placed in the residue of my estate.'" 270 Kan. at 369. One of the sisters-in-law predeceased Haneberg, and the district court found the devise could not be

construed as a devise to a class; the devise to the deceased sister-in-law lapsed; and the real estate would be distributed to Haneberg's heirs at law as the will contained no residuary clause. Our Supreme Court affirmed the district court's finding that the gift was not a gift to the sisters-in-law as a class but as individuals as tenants in common and the gift lapsed upon one of the sister-in-law's death. The gift, therefore, passed through intestacy. 270 Kan at 373.

*In re Estate of Haneberg* is also distinguishable from this case because the will conditioned the devise on the named beneficiaries surviving Haneberg. Again, Larry provided no condition to his parents inheriting his estate. The facts here present the very situation for which the anti-lapse statute was created. That is, Larry's devise was made to relatives within the sixth degree—his parents—and such relatives died before Larry, leaving issue who survived Larry. The issue who survived Larry "shall take the same estate which said devisee or legatee would have taken if he or she had survived, unless a different disposition is made or required by the will." See K.S.A. 59-615(a). The issue of Larry's parents, therefore, shall take the same estate Larry's parents would have taken if they had survived Larry, except for Larry's children because the will expressly disinherited them.

It is our duty "to construe, not to construct, a will." *Haneberg*, 270 Kan. at 371. That is, we cannot infer the testator's intent and construe the will to give effect to the inferred intent, nor can we "rewrite the will in whole or in part to conform to such presumed intention." 270 Kan. at 371. "Where the language of a will is clear, definite, and unambiguous, the court should not consider rules of judicial construction to determine the intent of the testator." 270 Kan. at 371. To determine whether a will is ambiguous, we must consider whether the testator's intent can be ascertained from the four corners of the document. 270 Kan. at 371. "In interpreting the language of a will, the law prefers a construction which will prevent a partial intestacy to one which will permit

it, if such construction may reasonably be given." *In re Estate of Cribbs*, 180 Kan. 840, 844, 308 P.2d 111 (1957).

We have been unable to find any supporting Kansas caselaw discussing how disinherited heirs in a will should be treated under the anti-lapse statute when there are other heirs at law. However, our research has found other states have determined disinherited heirs are treated as predeceasing the testator. See *In re Estate of Melton*, 128 Nev. 34, 54, 272 P.3d 668 (2012) ("[I]t is commonly understood that when a disinheritance clause is enforceable as to intestate property, a disinherited heir is treated, as a matter of law, to have predeceased the testator."); *Matter of Beu*, 70 Misc. 2d 396, 399, 333 N.Y.S.2d 858 (N.Y. Sur. Ct. 1972) ("[A] disinherited person would be considered to have predeceased the testator."); see also Schwartz, *Models of the Will and Negative Disinheritance*, 48 Mercer L. Rev. 1137, 1145 (1997) ("A provision disinheriting [an heir] should result in an application of the intestacy statute as if [that heir] predeceased the testator."); Heaton, *The Intestate Claims of Heirs Excluded by Will: Should "Negative Wills 7D" be Enforced?*, 52 U. Chi. L. Rev. 177, 192 (1985) (When a disinheritance clause is enforced as to intestate property, "the excluded heir is treated as having predeceased the testator."). We are persuaded by this authority and will apply it here.

Further, we must look to the construction of the will itself as we cannot consider rules of judicial construction to determine the intent of the testator if the language of the will is clear and unambiguous. *Haneberg*, 270 Kan. at 371. We cannot infer Larry's intent to disinherit his grandchildren and construe the will to give effect to such inferred intent. We also cannot rewrite the will in whole or in part to include language to conform to a presumed intent Larry wanted to disinherit his grandchildren as well as his children. See 270 Kan. at 371. Such language does not exist in the will. Larry clearly expressed he disinherited his children and easily could have included his grandchildren, who he was aware of, in the disinheritance provision of his will but did not. In fact, "there is a

presumption against any intention on the part of a testator to disinherit his legal heirs *who are favored by the policy of the law and may not be disinherited by mere conjecture.*" *In re Estate of Lester*, 191 Kan. 83, 87, 379 P.2d 275 (1963).

Under the anti-lapse statute, we look at the lineal descendants of the party who would have taken the estate had they not predeceased the testator. K.S.A. 59-615(a). Here, Larry's grandchildren are lineal descendants of Larry's parents—who would have taken the estate had they not predeceased Larry. Again, the will expressly disinherits Larry's children only. Under this analysis, the estate would pass to Mandelin, Davenport, and Pearl's four children per stirpes. Davenport's share can only come from the portion of the estate Clara's heirs share.

*Attorney Fees*

The administrator C.T.A. of the estate timely filed a motion for attorney fees in the amount of $16,946.50 related to the appeal and an affidavit in support of the motion. Mandelin objected to the motion, claiming the district court already addressed the issue of attorney fees and explained that filing three separate appellee briefs would unnecessarily deplete the estate's assets and the parties should advance the costs and expenses of such briefs and seek reimbursement from the estate later. Mandelin argues the administrator C.T.A. did not need to engage in the appeal and could have simply waited for us to decide who was entitled to inherit from the estate and pay out the assets accordingly. While Davenport and Sullivan filed a joint brief, Mandelin chose to file separately.

"It is a well established rule that attorney fees and expenses may not be allowed against the estate of a decedent unless authorized by statute." *In re Estate of Robinson*, 236 Kan. 431, 434, 690 P.2d 1383 (1984). Whether a court has authority to award

attorney fees is a question of law subject to unlimited review. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013).

K.S.A. 59-1717 states:

> "Every fiduciary shall be allowed his or her necessary expenses incurred in the execution of his or her trust, and shall have such compensation for services and those of his or her attorneys as shall be just and reasonable. At any time during administration the fiduciary may apply to the court for an allowance upon his or her compensation and upon attorneys' fees."

See *In re Estate of Barnes*, No. 125,990, 2023 WL 8868784, at *6 (Kan. App. 2023) (unpublished opinion) (finding administrator of estate "is entitled to . . . reasonable attorney fees irrespective of the outcome of these proceedings"), *rev. denied* 318 Kan. 1086 (2024).

Supreme Court Rule 7.07(b)(1) (2025 Kan. S. Ct. R. at 52) allows us to award attorney fees for appellate services when the district court had authority to award such fees. Based on the above statutes, the district court had authority to award "the appropriate and necessary costs and expenses of administration." K.S.A. 59-1301. We therefore award the administrator C.T.A., who was acting as a fiduciary to represent the estate's interest, her necessary expenses and reasonable fees for her attorneys. Based on the itemized billing by the administrator's attorney, the amount of $16,946.50 is reasonable to conduct appellate work, including appellate briefing, considering jurisdictional issues raised in our show cause order, and drafting a motion for attorney fees.

Bly and Pearl also timely requested attorney fees in the amount of $21,515.50, asserting they acted in good faith to protect their interests in the estate and determine the rightful heirs. Mandelin objected to Bly and Pearl's request for attorney fees as well.

11

K.S.A. 59-1504 explains:

"Whenever any person named in a will or codicil defends it, or prosecutes any proceedings in good faith and with just cause, for the purpose of having it admitted to probate, whether successful or not, or if any person successfully opposes the probate of any will or codicil, such person shall be allowed out of the estate his or her necessary expenses and disbursements in such proceedings, together with such compensation for such person's services and those of his or her attorneys as shall be just and proper.

"Any heir at law or beneficiary under a will who, in good faith and for good cause, successfully prosecutes or defends any other action for the benefit of the ultimate recipients of the estate may be allowed his or her necessary expenses, in the discretion of the court, including a reasonable attorney's fee."

Bly and Pearl rely on *In re Estate of Robinson* to suggest we should award them attorney fees regardless of the success of their appeal. Bly and Pearl fail to point out that *Robinson* focuses on the first paragraph of K.S.A. 59-1504 related to persons named in a will or codicil who prosecute or defend proceedings *for the purpose of having the will admitted to probate*. *Robinson*, 236 Kan. at 434-35. The issue here is not whether Larry's will should have been admitted to probate; the issue is interpretation of his will, which would fall in the category of "any other action for the benefit of the ultimate recipients of the estate" as addressed in the second paragraph of K.S.A. 59-1504. And any heir at law must make a "good faith and for good cause" claim for the benefit of the ultimate recipients of the estate. K.S.A. 59-1504. Here, Bly and Pearl tried to find a loophole to suggest they should inherit their father's entire estate despite his clear and directly contradictory wishes.

In *In re Estate of Mildrexter*, 25 Kan. App. 2d 834, 971 P.2d 758 (1999), another panel of our court examined the second paragraph of K.S.A. 59-1504—the statute relevant here. The panel explained the statute has three threshold requirements to recover

12

attorney fees:  "(1) The party must be successful in his or her action; (2) the action must ultimately benefit the recipients of the estate; and (3) the court must exercise its discretion to allow fees." 25 Kan. App. 2d at 838. Bly and Pearl were not successful in their action before the district court and have not been before us. Because they do not inherit anything from the estate based on Larry's expressed intent in his will to disinherit them, their action has not benefited the estate or the recipients of the estate—Mandelin, Davenport, and Pearl's four children. We deny Bly and Pearl's motion for attorney fees.

Affirmed.