(62 P.3d 680)

No. 88,204

JOHNSON COUNTY AUTO CREDIT, INC., *Appellant*, v.
DAVID A. GREEN and RONDA L. GREEN, *Appellees*.

Opinion filed February 7, 2003.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for the appellant.

*Timothy J. Turner*, of Overland Park, for the appellees.

Before PIERRON, P.J., LEWIS, J., and BUCHELE, S.J.

BUCHELE, S.J.: Johnson County Auto Credit, Inc., (Auto Credit) appeals the district court decision that it failed to prove it had reasonably deemed its collateral or prospect of payment to be significantly impaired and that repossession of David and Rhonda Greens' van was a wrongful taking. Auto Credit also argues the court erred in awarding attorney fees to the Greens based on its finding there were violations of the Uniform Consumer Credit Code (UCCC), K.S.A. 16a-2-101 *et seq.*

In February 1996, the Greens purchased a 1989 Ford Aerostar van and financed the purchase through a promissory note and security agreement with Auto Credit for $7,598.18. The original payment plan provided for weekly payments of $65.34. Shortly thereafter in May 1996, the Greens fell behind on their payments. Auto Credit sent a right to cure notice, and the Greens cured the default. The parties agreed on biweekly payments, and the Greens remained current until November 1997. On November 6, 1997, both parties were sent a letter from California Casualty Group giving notice of cancellation of insurance on the Greens' van effective

November 21, 1997, unless the Greens paid the necessary insurance premium.

On November 14, 1997, the Greens signed an extension agreement with Auto Credit which reinstated the weekly payments, extended the time to make the next installment payment, and required payment of past due interest. The extension agreement did not address the notice of cancellation of insurance.

The Greens acknowledge they did not pay the insurance premium. The insurance coverage on the van was terminated November 21, 1997, for nonpayment. The Greens made five payments under the extension agreement, but failed to make payments for December 30, 1997, and January 6, 1998.

Sometime in the first week of January 1998, Auto Credit received a written note from Ronda stating:

"Johnson County Auto Credit.
We [sic] here we are again! Our financial situation is falling fast. I am so sorry. We really appreciate all the work you've done for us. We have an appointment on Jan. 12th concerning these issues. We'll be back in contact then!
Thanks & Sorry Again
Mrs. Ronda Green."

Auto Credit concluded this note was a signal that the Greens were going to file for bankruptcy, and ordered repossession of the van on January 7, 1998. Auto Credit claims it attempted to contact the Greens at their residential telephone but the number was either blocked or disconnected. On January 8, 1998, the Full Moon Recovery Services repossessed the van from the Greens' residence. Following repossession, the van was sold at Metro Auto Auction for $1,400. Auto Credit sued the Greens for the remaining balance on the promissory note of $2,727.70.

The factors relied upon by Auto Credit to establish its belief of significant impairment of collateral were (1) the Greens' past payment history and current status of delinquency in payment on the extension agreement (2) the notice of cancellation of insurance coverage on the van from California Casualty Group, dated November 6, 1997, effective November 21, 1997, (3) the inability to contact the Greens by phone after two attempts, and (4) the handwritten note from Ronda that did not promise future payments,

which Auto Credit interpreted to mean the Greens were contemplating filing for bankruptcy.

Auto Credit argues the forgoing were sufficient reasons for it to have had a reasonable belief that the prospect of realization of collateral was significantly impaired at the time of the repossession and, therefore, the repossession upon default was lawful because the Greens failed to keep the van properly insured and it was uninsured at the time of repossession.

The trial court conducted a full trial on the matter of whether Auto Credit was proper in its claim that it had a right to repossession based upon significant impairment of the prospect of payment, performance, or realization of its collateral. The court reasoned that even though the Greens allowed the insurance to lapse, Auto Credit, with knowledge of a possible lapse of insurance, continued the relationship and allowed execution of an extension agreement without any mention of the insurance. Nor did Auto Credit purchase auto insurance and add the cost onto the extension agreement. The court stated that at the time of repossession, the Greens were only 15 days in arrears. The court also noted that the Greens continued to maintain communication with Auto Credit, and Auto Credit never contacted the Greens for an explanation of Ronda's written note indicating the Greens' finances were falling fast. The court concluded it was unreasonable for Auto Credit to believe the Greens were filing for bankruptcy since at no time in this case did the Greens ever threaten or even mention the possibility of filing for bankruptcy protection.

The trial court granted judgment to the Greens for the replacement value of their automobile in the amount of $2,925. The court granted judgment to Auto Credit for the remaining balance due on the promissory note of $2,727.70, resulting in a set-off judgment due to the Greens in the amount of $197.30. In a subsequent ruling, the court found that Auto Credit's wrongful taking required mandatory attorney fees under the UCCC and granted judgment to the Greens in the amount of $5,000 for their attorney fees.

There are three separate agreements signed by the Greens in connection with this transaction that require them to maintain in-

surance on the van. The promissory note/security agreement provided in part:

"INSURANCE   I agree to buy insurance on the Property against the risks and for the amounts you require. I will name you as loss payee on any such policy. You may require added security on this loan if you agree that insurance proceeds may be used to repair or replace the Property. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will buy the insurance from a firm authorized to do business in Kansas. The firm will be reasonably acceptable to you. I will keep the insurance until all debts secured by this agreement are paid."

The Greens also signed an "Agreement to Provide Insurance," which stated:

"I understand that to provide protection from serious financial loss, should an accident occur, my installment contract requires the vehicle be continuously covered with insurance providing both collision and comprehensive coverages. . . .

"I further understand that if for any reason the above described insurance is not obtained and continuously maintained, JOHNSON COUNTY AUTO CREDIT, INC., may at its option, secure insurance according to the terms of my contract. I authorize JOHNSON COUNT AUTO CREDIT, INC., to add the premium and related financing charge for such insurance to my contract balance, and understand that such insurance does not provide bodily injury, property damage liability coverages."

The Greens also signed a document entitled "JOHNSON COUNTY AUTO CREDIT, INC. 'Rules of the road,'" which stated in part:

"8.)   INSURANCE:
You are to carry full coverage insurance on the secured vehicle for the term of the contract."

The default provisions in the security agreement executed by the Greens pattern the statutory language of the UCCC, which reads as follows:

"An agreement of the parties to a consumer credit transaction with respect to default on the part of the consumer is enforceable only to the extent that
(1) the consumer fails to make a payment as required by agreement; or
(2) the prospect of payment, performance, or realization of collateral is significantly impaired; the burden of establishing the prospect of significant impairment is on the creditor." K.S.A. 16a-5-109.

The trial court appears to have discounted the failure to maintain insurance factor because Auto Credit did not immediately move to seize the collateral when it became aware that the insurance had lapsed or to purchase coverage for the Greens' van to protect itself, but acted only when it received the note from Ronda alerting it to further economic storm clouds on the horizon.

There were no arguments raised at the trial court concerning the payment default provisions in K.S.A. 16a-5-109(1). The parties agreed the issues in the case only involved K.S.A. 16a-5-109(2), the question of significant impairment of collateral.

We have found no cases that squarely deal with the question whether failure to maintain automobile insurance is a significant impairment of collateral to permit repossession.

The parties have cited the cases of *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 777 P.2d 811 (1989), and *Medling v. Wecoe Credit Union*, 234 Kan. 852, 678 P.2d 1115 (1984). The courts in both cases found significant impairment of collateral. The facts in *Prairie State Bank* involved a bank's foreclosure of two real estate mortgages and a security interest in personal property as a result of a failed floral business. The trial court listed 13 facts in reaching its decision of significant impairment. The *Prairie State Bank* court agreed with the trial court and found the major factors in support of its finding of significant impairment were the repeated threats by the borrower to seek bankruptcy protection, possible removal of indebted personal property from the business premises, failure of the borrower to communicate with the bank, and the borrower's relayed intentions of not making any more payments to the bank. 245 Kan. at 246-47.

*Medling* involved repossession of a car upon a credit union's belief of significant impairment of collateral. The court found the repossession to be lawful based on the plaintiff's actions of (1) advising the credit union she was going to quit her job on January 4, 1980, (2) quitting her job instead on November 27, 1979; and (3) moving out of state to an address the credit union was unable to verify. The court also found the credit union spoke with the plaintiff on repeated occasions and she assured the credit union she would come in and explain the inconsistencies between her

plans and her actual conduct. Each time the plaintiff promised to come to the credit union, she did not show up. The plaintiff had divorced the cosigner on the loan and he was not reliable. 234 Kan. at 858-59. Neither of the forgoing cases address the failure to insure the collateral.

Auto Credit cites *Kelley v. Commercial National Bank*, 235 Kan. 45, 678 P.2d 620 (1984), in support of its position that allowing insurance to lapse causes significant impairment in an automobile loan because the collateral is very susceptible to accidents, significant damage, theft, or vandalism. In *Kelley*, the owner of a car allowed the collision insurance to expire. After the car was involved in an automobile accident and incurred $3,156.70 in repairs that the owner could not pay, the financing company took possession of the car pursuant to its security agreement. *Kelley* does not specifically address whether the repossession was proper as a result of significant impairment, but focuses on whether the creditor proceeded in a commercially reasonable fashion in the sale of collateral. But in *Kelley*, there is implied agreement with the lower court that "the trial court sustained Commercial's motion, finding Kelley was in default on the note for failing to keep the insurance in effect and Commercial had the right to repossess the car." 235 Kan. at 47. See also *Farmers & Merchants Bank v. Copple*, 190 Kan. 170, Syl. ¶ 1, 373 P.2d 219 (1962) (bank allowed to declare entire debt due and begin foreclosure of mortgage when mortgagor failed to insure property).

The purpose of K.S.A. 16a-5-109 is to offer some protection to a creditor from a consumer who defaults on a consumer credit transaction. This protection addresses two potential types of default: (1) when the consumer defaults on payment, and (2) when the prospect of payment, performance, or realization of collateral is significantly impaired. When a consumer is simply in default on payment, the UCCC requires notices be given and then a consumer is given a period of time to cure the default prior to repossession. K.S.A. 16a-5-110.

The Kansas Legislature did not impose any notice requirements when the default in a consumer credit transaction is based on the significant impairment of the prospect of payment, performance,

or realization of collateral. The logical explanation for the distinction is that a default in payment can be satisfied by looking to the collateral, whereas a failure to provide insurance can eliminate or severely reduce the value of the security, leaving the creditor with a significantly greater risk of loss than was bargained for. A lender should not be required to forgo repossession when a borrower is in default on the terms of the loan to insure the vehicle.

We hold that when the terms of the promissory note or security agreement for a loan to purchase an automobile require the borrower to insure the vehicle and the borrower defaults on this provision, the collateral is significantly impaired as a matter of law pursuant to K.S.A. 16a-5-109(2) and the automobile may be attached by the lender.

Our finding that there was a significant impairment of collateral renders the repossession of the Greens' van lawful and, therefore, the other issues raised in this appeal are moot.

Reversed.

PIERRON, J.: dissenting. I respectfully dissent. Regarding the insurance question, the trial court relied on the fact that although the Greens allowed the insurance to lapse, Auto Credit, with knowledge of a possible lapse of insurance, continued the relationship and allowed execution of an extension agreement without any mention of the insurance. Nor did Auto Credit purchase auto insurance and tack the cost onto the extension agreement. The court stated that at the time of repossession, the Greens were only 15 days in arrears. The court also noted that the Greens continued to maintain communication with Auto Credit, and Auto Credit never called the Greens for an explanation as to Ronda's written note indicating their financial difficulties. The court concluded it was unreasonable for Auto Credit to believe the Greens were filing for bankruptcy since at no time did the Greens threaten or even mention the possibility of filing for bankruptcy protection.

The major factors of significant impairment relied on in *Prairie State Bank* and *Medling* are not present in the case at bar. The purpose of K.S.A.16a-5-109 is to protect a creditor from a consumer who defaults on a consumer credit transaction. This protec-

tion addresses two potential types of default: (1) when the consumer defaults on payment, and (2) when the prospect of payment, performance, or realization of collateral is significantly impaired. When a consumer is simply in default on payment, the UCCC provides for statutorily required notices and then a consumer is given a period of time to cure the default prior to repossession. K.S.A. 16a-5-110.

The Kansas Legislature did not impose any notice requirements when the default in a consumer credit transaction is based on the significant impairment of the prospect of payment, performance, or realization of collateral. However, the creditor's burden of proof to establish significant impairment should not be an insignificant one. Creditors are not allowed repossession under *any* impairment but, rather, under a *significant* impairment of collateral.

The trial court weighed all the evidence and concluded that Auto Credit lacked a reasonable belief of significant impairment. Auto Credit has not alleged bias, passion, or prejudice on the part of the trial court or the court's disregard of undisputed evidence.

Based on our standard of review, the only basis for Auto Credit's belief of significant impairment that could be legally sufficient is the failure of the Greens to keep the van insured. The Greens' slow payments, financial problems, and the communication problems were reasonably found by the trial court to not constitute significant impairment under these facts.

The trial court appears to discount the insurance factor because Auto Credit did not immediately move to seize the collateral when it became aware of the definite possibility that the insurance would lapse. Only when Auto received a note from Ronda alerting it to further economic storm clouds on the horizon did it act. Since the court found the information provided by Ronda did not separately constitute the basis for a reasonable belief of significant impairment, it found there was no significant impairment.

The legislature obviously wanted to place restrictions on the ability of finance companies to repossess vehicles without legal process. Failure to insure a vehicle as required by the financing agreement *could* certainly be a factor leading to the conclusion that the collateral was significantly impaired. However, in the instant case, it

did not seem to be a weighty one in the mind of Auto Credit, as it apparently took no action because of it.

I believe it was not an abuse of discretion for the trial court, under these facts, to find there was no significant impairment. The Greens were very candid with Auto Credit and showed no indications they were going to do anything dishonest or reckless. Auto Credit could have insured the van itself and billed that to the Greens. More basically, it could have asked the Greens about the insurance problem and demanded action. Had this been done, failure to take immediate action by the Greens would probably have constituted a significant impairment of the collateral.

I do not find the trial court's ruling to be irrational or unsupported by competent probative evidence and would affirm.