No. 88,204

JOHNSON COUNTY AUTO CREDIT, INC., *Appellant,* v. DAVID A. GREEN AND RONDA L. GREEN, *Appellees.*

(83 P.3d 152)

Opinion filed January 30, 2004.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause and *Janae S. Bennett,* of the same firm, was with him on the briefs for appellant.

*Timothy J. Turner,* of Overland Park, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

NUSS, J.: This case concerns a consumer credit transaction between borrowers David and Ronda Green and their lender Johnson County Auto Credit, Inc. (Auto Credit). The loan was secured by the Greens' van which Auto Credit repossessed and sold because it believed its collateral had been significantly impaired. The district court granted Auto Credit a deficiency judgment against the Greens but also granted judgment to the Greens on their counterclaim because the repossession violated the Uniform Consumer Credit Code (UCCC), K.S.A. 16a-1-101 *et seq.* The court also granted the Greens' accompanying request for attorney fees under the UCCC.

Auto Credit appealed, and, in a split decision, the Court of Appeals reversed. *Johnson County Auto Credit, Inc. v. Green,* 31 Kan. App. 2d 250, 62 P.3d 680 (2003). It essentially held that a borrower's failure to insure a secured vehicle — as required by the terms of a consumer credit transaction — overrides all other facts and by itself constitutes significant impairment of the collateral as a matter of law under K.S.A. 16a-5-109. We granted the Greens' petition for review under K.S.A. 20-3018(b).

The parties present three issues on appeal:

1. Did the Court of Appeals apply an erroneous standard of review?
2. Did the Court of Appeals err by holding that the failure to insure a secured vehicle, by itself, constitutes significant impairment under K.S.A. 16a-5-109(2) as a matter of law?
3. Did the district court err in awarding attorney fees?

We reverse the Court of Appeals and affirm the district court.

## FACTS

In February 1996, David and Ronda Green purchased a 1989 Ford Aerostar van from Shawnee Mission Ford, making a down payment of $3,000 and financing the remaining $7,598.18 through Auto Credit. The Greens executed and delivered to Auto Credit a promissory note and security agreement, granting to Auto Credit

a security interest in the van and promising to make weekly payments of principal and interest of $65.34.

Terms of three separate agreements signed by the Greens required them to carry insurance on the van. Accordingly, the Greens purchased insurance coverage and furnished proof of insurance to Auto Credit. However, on November 6, 1997, their insurer, California Casualty Group, gave notice to Auto Credit of its intention to cancel the van's insurance 15 days later on November 21 for nonpayment of premium. The notice provided that cancellation was rescindable if the "Premium Due" was paid by November 21. Auto Credit received no further notice of whether the Greens' insurance was cancelled or continued and made no inquiry of the Greens or of the Greens' insurer. The Greens later acknowledged their van's insurance coverage terminated on November 21 for nonpayment of premium.

Per one of the signed agreements, Auto Credit had reserved the option to purchase insurance coverage and to add the cost to the Greens' payment obligation. Despite the notice from the Greens' van insurer of imminent insurance cancellation, Auto Credit declined to purchase insurance for the van because its usual practice was not to do so for uninsured vehicles in which it holds a security interest.

Shortly thereafter on November 14, because the Greens had been unable to maintain their schedule of obligations, the Greens and Auto Credit executed an extension agreement providing payment of past due interest and for extension of time to make the next installment payment. Despite the notice from the Greens' van insurer of imminent insurance cancellation, Auto Credit made no demand on the Greens to provide additional proof of coverage.

After signing the extension agreement on November 14, the Greens made five additional payments but failed to make any after December 22.

On January 7, 1998, Auto Credit received the following undated, handwritten note from Mrs. Green:

"Johnson County Auto Credit

"We here we [*sic*] are again! Our financial situation is falling fast. I am so sorry. We really appreciate all the work you've done for us. We have an appointment on Jan. 12th concerning these issues. We'll be back in contact then!

"Thanks & Sorry again
"Mrs. Ronda Green."

The same day Auto Credit received Mrs. Green's note, it ordered Full Moon Recovery Services to repossess the Greens' van. The special instructions from Auto Credit on the repossession order stated: "We think these folks are going to file bankrupsy [sic]." The van was repossessed from the Greens' residence the next day, January 8.

On February 23, 1998, Auto Credit sold the van for $1,400. It then sued the Greens for the amount of the deficiency on the loan, and the Greens counterclaimed, alleging that Auto Credit repossessed the van in violation of K.S.A. 16a-5-109.

Auto Credit argued to the district court that it relied upon the following factors to establish its belief of significant impairment of the collateral and to justify its repossession:

1. The Greens' past payment history and current status of delinquency in payment on the extension agreement;
2. the notice of cancellation of insurance coverage dated November 6 and effective November 21;
3. the inability to contact the Greens by phone after two attempts;
4. the handwritten note from Mrs. Green, which Auto Credit interpreted to mean the Greens were filing for bankruptcy.

The district court found that payment was 15 days in arrears. It also found, however, that the Greens did not attempt to conceal their whereabouts, despite Auto Credit's assertion that it was unable to contact the Greens on two occasions. The court additionally found, based on the testimony of Auto Credit's employees, that there was no evidence that the vehicle was not at the appropriate location, was in the hands of third parties, had been damaged or allowed to deteriorate, or was otherwise in physical jeopardy.

The district court also found that Mrs. Green remained communicative with Auto Credit by sending a written apology for any late payment and by advising Auto Credit of her intent to meet with an advisor concerning her financial situation. It further found that Mrs. Green's note "expressed no intent to pursue bankruptcy and was subject to several reasonable interpretations." The court

additionally found that Auto Credit made no attempt to contact the Greens for an explanation of the note prior to ordering repossession of the van, but simply assumed that they intended to declare bankruptcy, although they never specifically used the word "bankruptcy" during their communications with Auto Credit.

The district court then ruled as follows:

"The court finds that Plaintiff has failed to prove that it reasonably deemed the collateral or prospect of payment to be impaired. The repossession [of] Defendants' automobile was a wrongful taking and Defendants are therefore entitled to the reasonable replacement value of their automobile at the time of its taking, i.e., $2,925.00. However, the court also finds that Plaintiff did prove that the balance due on the promissory note was $2,727.70 and Defendants are entitled to set off the value of the vehicle of $2,925.00 against the balance due on the note claimed by Plaintiff in the amount of $2,727.70, leaving a net judgment in favor of Defendants Green in the sum of $197.30."

In a separate journal entry of judgment, the district court reiterated that the taking of the van violated K.S.A. 16a-5-109 and that the court was without discretion to deny the Greens' prayer for an award of attorney fees. It awarded $5,000 for attorney fees, considering the complexity of the issues, the removal of the case from a lower court, the discovery, the research necessary, the trial of the case, and the submission of suggested findings and supplemental suggested findings.

Auto Credit appealed both determinations. A split Court of Appeals reversed on the significant impairment issue, which made the attorney fees award moot.

## ANALYSIS

Issues 1 and 2: *Did the Court of Appeals apply an erroneous standard of review and, if so, did the district court correctly determine that the collateral was not significantly impaired?*

Our threshold task is to determine the standard of review. The Greens contend that the Court of Appeals failed to apply the proper standard. They assert that the district court issued a negative finding when it determined that Auto Credit failed to prove that the prospect of payment, performance, or realization of collateral was significantly impaired. See *In re Estate of Haneberg,*

270 Kan. 365; 374, 14 P.3d 1088 (2000) (A negative finding means the party with the burden of proof failed to meet that burden.). See also K.S.A. 16a-5-109 (creditor has burden of establishing significant impairment). As a result, they contend we should not disturb this negative finding absent proof of arbitrary disregard of undisputed evidence or some extrinsic circumstance such as bias, passion, or prejudice. See 270 Kan. at 374.

Auto Credit, however, examines the language of the Court of Appeals' opinion and essentially argues that the Greens' admitted failure to maintain insurance is a breach of contract, that the determination of significant impairment is one of law, and that our review is therefore unlimited. See *Lindsey v. Miami County National Bank,* 267 Kan. 685, 689-90, 984 P.2d 719 (1999).

The Court of Appeals did not articulate the standard it used for reviewing the district court's decision but stated:

"We hold that when the terms of the promissory note or security agreement for a loan to purchase an automobile require the borrower to insure the vehicle and the borrower defaults on this provision, the collateral is significantly impaired *as a matter of law* pursuant to K.S.A. 16a-5-109(2) and the automobile may be attached by the lender." (Emphasis added.) 31 Kan. App. 2d at 256.

Auto Credit, and the Court of Appeals, are incorrect for two reasons.

First, whether an impairment is significant under K.S.A. 16a-5-109(2) is a question of fact. In the two cases where this court has addressed the issue, we upheld both district courts' findings of significant impairment on the basis that substantial competent evidence supported their determinations. See *Medling v. Wecoe Credit Union,* 234 Kan. 852, 859, 678 P.2d 1115 (1984); *Prairie State Bank v. Hoefgen,* 245 Kan. 236, 248, 777 P.2d 811 (1989). In other words, each district court determined that the creditor had met its burden of proof on the issue. See K.S.A 16a-5-109.

Second, and more important, the district court in the instant case — unlike the district courts in *Medling* and *Hoefgen* — determined that the creditor failed to meet its burden of proof to show significant impairment. This is a negative finding, and as the Greens point out, our resultant standard of review would be even

less stringent than the one we used in *Medling* and *Hoefgen*. See *Haneberg*, 270 Kan. at 374.

As discussed below, the Greens prevail under both standards, *i.e.*, negative finding and substantial competent evidence. There is no proof of the district court's arbitrary disregard of undisputed evidence or the influence of some extrinsic circumstance such as bias, passion, or prejudice. Furthermore, the findings of the district court are supported by substantial competent evidence. More particularly, contrary to the Court of Appeals' decision, the Greens' failure to insure a secured van — as required by the terms of their consumer credit transaction — does not override all the other facts in this case and does not by itself constitute significant impairment of the collateral as a matter of law under K.S.A. 16a-5-109.

Before further analyzing how the Greens satisfy even the higher standard, a look at the statutory and case law is required.

As stated previously, this transaction is subject to the UCCC. While the rights of the creditor and debtor in the default of a secured transaction are controlled by the Uniform Commercial Code (UCC), K.S.A. 84-9-101 *et seq.*, such rights nevertheless may be changed by the UCCC. *Kelley v. Commercial National Bank*, 235 Kan. 45, 51, 678 P.2d 620 (1984); see K.S.A. 84-9-203(4) (transaction subject to the UCC may also be subject to the UCCC). Where provisions of the UCC and the UCCC conflict, the provisions of the UCCC shall control. *Kelley*, 235 Kan. at 51.

The UCCC is more restrictive than the UCC on the subject of default. K.S.A. 16a-5-109 provides as follows:

"An agreement of the parties to a consumer credit transaction with respect to default on the part of the consumer is enforceable *only* to the extent that

"(1) the consumer fails to make a payment as required by agreement; or

"(2) the prospect of payment, performance, or realization of collateral is significantly impaired; the burden of establishing the prospect of significant impairment is on the creditor." (Emphasis added.)

In short, under the UCCC a creditor seeking to enforce the terms of a consumer credit transaction against a consumer who has defaulted on those terms can do so only if either (1) the consumer fails to make a payment required by the agreement or (2) the prospect of payment, performance, or realization of collateral is signif-

icantly impaired. Confining default to these scenarios is designed to prevent abuse of the consumer by the creditor. See K.S.A. 2002 Supp. 16a-5-109, Kansas Comment, 2000, subsection 1; *Prairie State Bank v. Hoefgen*, 245 Kan. at 243 (creditor no longer has unilateral power to define "default" as broadly as he desires in the security agreement).

While both scenarios are the product of efforts to protect the consumer, they also contain a fundamental difference. A creditor seeking to enforce based on the consumer's failure to make a payment is required to send the consumer a notice of the consumer's right to cure. See K.S.A. 16a-5-110(1). The consumer then has 20 days to cure. See K.S.A. 16a-5-111. The philosophy is to give the consumer a fair opportunity to bring his or her payments current before acceleration, repossession, or suit. *Medling*, 234 Kan. at 860.

On the other hand, a creditor seeking to enforce the agreement because of the prospect of significant impairment is not required to give the consumer notice, and the consumer has no right to cure. K.S.A. 2002 Supp. 16a-5-110, Kansas Comment, 2000, subsection 3. There is no right to cure because unlike a default for a missed payment such a default endangers the prospects of a continuing relationship between the creditor and the debtor. K.S.A. 2002 Supp. 16a-5-109, Kansas Comment, 2000, subsection 2; see K.S.A 2002 Supp. 16a-5-110, Kansas Comment, 2000, subsection 3 (unlike a late payment, a breakdown in the relationship between the consumer and the creditor which constitutes "significant impairment" cannot be cured).

While the creditor under this latter scenario does not have to give notice, it does have the burden of establishing the prospect of significant impairment by a preponderance of the evidence. K.S.A. 16a-5-109(2); *Prairie State Bank v. Hoefgen*, 245 Kan. at 246. Subsection 2 of the statute therefore changes the UCC in two ways. First, it places the burden of proof on the creditor to justify action on a claim of default of this type. K.S.A. 2002 Supp. 16a-5-109, Kansas Comment, 2000, subsection 2. Contrast K.S.A. 84-1-208 (burden of establishing lack of good faith is on the party against whom the power has been exercised). Second, it also prohibits the so-called insecurity clauses under which default and acceleration

can be called whenever the creditor in good faith feels "insecure." K.S.A. 2002 Supp. 16a-5-109, Kansas Comment, 2000, subsection 3; see K.S.A. 84-1-208 (creditor has power to accelerate because of insecurity "only if he in good faith believes that the prospect of payment or performance is impaired"). The creditor arguing significant impairment under the UCCC, therefore, has a more stringent test than the UCC test for acceleration. See *Kelley,* 235 Kan. at 51 (where provisions of the UCC and the UCCC conflict, the UCCC controls). The trial court may, however, "[a]long with other relevant evidence," consider the reasonable beliefs of the creditor as a factor to determine significant impairment. *Hoefgen,* 245 Kan. at 243.

We must now consider how to determine whether "significant impairment" exists. K.S.A. 2002 Supp. 16a-5-109, Kansas Comment, 2000, subsection 2, provides general parameters, stating that significant impairment "relates to behavior of the consumer which endangers the prospect of a continuing relationship. It may be insolvency, illegal activity, or an impending removal of assets from the jurisdiction. There must, however, be circumstances present which significantly impair the relationship."

The general contours were somewhat filled in by *Hoefgen.* There, the trial court's finding of significant impairment which we upheld was based on 13 factors including, among others, the debtor's problems with insufficient funds checks, the declining perishable inventory, declining sales, threats from the debtor's agent, the specter of bankruptcy, and the debtor's threats to withhold future payment. A major factor was the debtor's refusal to communicate with the creditor. 245 Kan. at 245-47.

Five years earlier in *Medling v. Wecoe Credit Union,* 234 Kan. 852, the creditor had relied upon eight factors: the inability to get the debtor to discuss the loan; the inability to get the debtor to clarify statements regarding a possible move to Michigan; unsuccessful attempts to verify the Michigan address; the uncertain status of a cosigner's employment and residency in Kansas; the knowledge that the debtor was now unemployed; the termination of the debtor's automatic payroll deductions; the creditor's fear that the debtor would leave Kansas with the collateral; and the fact that

the loan was at the upper limits of the creditor's lending policy. 234 Kan. at 857.

We upheld the trial court's finding of significant impairment. It had specifically found the debtor advised the creditor on November 27 she would be quitting her job on January 4; in fact, she quit on November 27 and was going to move to Michigan, taking the car to an address which the creditor was unable to identify. The court also found that the creditor contacted the debtor on four different days in December for the purpose of having her come in to explain the inconsistencies between her stated plans and her actual conduct. Each time the debtor promised to come in shortly thereafter but never did. The court also found that after the promissory note was executed, the debtor became divorced from the cosigner, and he was "apparently not very reliable." 234 Kan. at 858-59.

Both *Medling* and *Hoefgen* demonstrate that this court has reviewed a variety of factors considered by the district court to determine whether significant impairment existed. The factors in each case will vary, and we have not set out a comprehensive list.

This court, however, has decided no cases addressing whether the consumer's failure to insure collateral, as required by the terms of a consumer credit transaction, by itself constitutes significant impairment. Auto Credit cites *Kelley v. Commercial National Bank*, 235 Kan. 45. There, the trial court found that the debtor was in default for failing to keep the automobile insurance in effect. *Kelley* is of no guidance, however, because this issue was not raised on appeal.

Auto Credit also cites *Farmers & Merchants Bank v. Copple*, 190 Kan. 170, 373 P.2d 219 (1962). There, this court found that a mortgagee could foreclose a real estate mortgage upon a breach of the mortgagors' covenant to keep the premises insured. 190 Kan. at 175. *Copple*, however, was decided prior to Kansas' adoption of the UCCC. Accordingly, the *Copple* court did not perform the analysis required in the instant case. Specifically, it did not determine whether the failure to insure — while a breach of the agreement — also constituted significant impairment of the prospect of payment, performance, or realization of collateral. Moreover, un-

like the instant case, *Copple* does not provide that even after the creditor learned of the imminent cancellation of insurance that it entered into a new agreement with the debtors and continued receiving regular payments. Instead, the *Copple* creditor made the insurance payment for the debtors on the day it was due and then sued.

We acknowledge that courts in other states have ruled that the debtor's lack of insurance, as required by an agreement, constitutes default, allowing the creditor to repossess the collateral. *Ash v. Peoples Bank of Greensboro*, 500 So. 2d 5, 7 (Ala. 1986); *Wagner v. Ford Motor Credit Co.*, 155 Ga. App. 729, 729-30, 272 S.E.2d 500 (1980); *Ford Motor Credit Co. v. Neiser*, 196 Ill. App. 3d 515, 527, 554 N.E.2d 322 (1990); *Johnston v. Stinson*, 418 So. 2d 805, 806 (Miss. 1982); *McCall v. Owens*, 820 S.W.2d 748, 751 (Tenn. App. 1991). However, these cases do not hold that under statutes similar to K.S.A. 16a-5-109, failure to insure automatically constitutes substantial impairment. Indeed, they make no mention of the UCCC, much less make any application of the code to the specific case facts to determine whether the lack of insurance significantly impairs the prospect of payment, performance, or realization of collateral.

Nevertheless, Auto Credit argues that the lapse or cancellation of insurance coverage is a clear indication of impairment of the collateral, asserting that there is no category of collateral more subject to destruction than a motor vehicle. It asserts that a vehicle can be destroyed by storm, fire, or collision and is highly susceptible to theft and vandalism. Auto Credit concludes that failure to insure alone constitutes significant impairment of collateral as a matter of law under K.S.A. 16a-5-109.

Essentially, Auto Credit argues that the Greens' failure to insure overrides all other facts in this case. Judge Pierron's dissenting opinion for the Court of Appeals in the instant case expresses the problem with that approach:

"Failure to insure a vehicle as required by the financing agreement *could* certainly be a factor leading to the conclusion that the collateral was significantly impaired. However, in the instant case, it did not seem to be a weighty one in the mind of.

Auto Credit, as it apparently took no action because of it." 31 Kan. App. 2d at 257-58.

In rejecting Auto Credit's argument, we also affirm the analytical path we took in *Medling* and *Hoefgen, i.e.,* examining all the facts relevant to the issue of significant impairment.

Here, the district court found that the van was not insured and payment was 15 days in arrears at the time of repossession. It also found, however, that despite Auto Credit having been informed of the imminent insurance cancellation, Auto Credit did not follow up with either the insurer or the Greens to learn if the insurance had been actually cancelled nor did Auto Credit purchase replacement insurance itself and pass the cost on to the Greens. It also found that — despite Auto Credit's reliance upon the insurance cancellation as a basis for believing its collateral was significantly impaired — after Auto Credit learned of the insurance problem, it executed an extension agreement and accepted five payments under the agreement.

The district court also found that the Greens had not concealed themselves or the collateral, that the collateral was not in physical jeopardy, that the Greens remained communicative with Auto Credit, and that the note from Ronda Green expressed no intent to pursue bankruptcy. It found that these factors, taken together, did not constitute a significant impairment of the prospect of payment, performance, or realization of the collateral.

Given our deferential standard of review of a district court's findings, we hold substantial competent evidence exists to support these findings of the district court. See *Hoefgen,* 245 Kan. at 246. There certainly has been no proof provided on appeal that the district court arbitrarily disregarded undisputed evidence or was influenced by bias, passion, or prejudice when it found Auto Credit had not met its burden of proof. See *Haneberg,* 270 Kan. at 374. Accordingly, under the facts of this case, Auto Credit's repossession of the Greens' van was wrongful because it violated K.S.A. 16a-5-109.

Issue 3: *Was the district court's awarding of attorney fees appropriate?*

The Greens argue that because the van repossession was wrongful, Auto Credit must pay their attorney fees of $5,000.

K.S.A. 16a-5-201(8) addresses the attorney fees issue:

"In an action in which it is found that a creditor has violated any provision of K.S.A. 16a-1-101 through 16a-9-102, and amendments thereto, the court *shall* award to the consumer the costs of the action and to the consumer's attorneys their reasonable fees. Reasonable attorney's fees shall be determined by the value of the time reasonably expended by the attorney and not by the amount of the recovery on behalf of the consumer." (Emphasis added.)

The statute is mandatory, and the awarding of attorney fees is not a matter within the court's discretion. See *Farmers State Bank v. Haflich,* 10 Kan. App. 2d 333, 340, 699 P.2d 553 (1985). The amount of an attorney fee award, however, is within the sound discretion of the district court and will not be disturbed on appeal absent a showing that the district court abused that discretion. *Davis v. Miller*, 269 Kan. 732, 750, 7 P.3d 1223 (2000). Discretion is abused only where no reasonable person would take the trial court's view. *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 173, 61 P.3d 687 (2003).

A violation of the UCCC occurred, and the Greens' counsel provided the district court with an affidavit regarding attorney fees. Auto Credit does not contest the specific amount of the attorney fees. Consequently, we cannot say that no reasonable person would take the position adopted by the district court when it awarded $5,000. Therefore, attorney fees for the Greens in that amount are appropriate.

The decision of the Court of Appeals is reversed, and the decision of the district court is affirmed.

BEIER, J., not participating.
BRAZIL, S.J., assigned.[1]

---

[1] **REPORTER'S NOTE:** Judge J. Patrick Brazil was appointed to hear case No. 88,204 vice Justice Beier pursuant to the authority vested in the Supreme Court by K.S.A. 20-2616.