Dᴇɴɴɪꜱ W. Hᴀʟʟ, *Appellant*, v. Fᴏʀᴅ Mᴏᴛᴏʀ Cʀᴇᴅɪᴛ Cᴏᴍᴘᴀɴʏ LLC, *Appellee*.

(254 P.3d 526)

Opinion filed April 29, 2011.

*Larry L. Livengood*, of Salina, argued the cause and was on the brief for appellant.

*Thomas J. Lasater*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *William P. Tretbar* and *Adam R. Burrus*, of the same firm, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Dennis W. Hall appeals the district court's denial of his petition for an injunction to restrain his creditor, Ford Motor Credit Company LLC (Ford Credit), from proceeding with a post-bankruptcy repossession of the vehicle upon which Ford Credit retained a lien. Hall contends that the district court erred in finding that Hall's filing of a Chapter 7 bankruptcy petition, by itself, constitutes a default under the security agreement that can be enforced by the creditor under the Kansas Uniform Consumer Credit Code (UCCC) provision contained in K.S.A. 16a-5-109(2). We find that the district court considered other facts, in addition to Hall's bankruptcy filing, and that all of the factors present in this case supported the district court's holding that the prospect of payment, performance, or realization of collateral had been significantly impaired. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL OVERVIEW

On December 28, 2006, Dennis W. Hall bought a 2006 Ford F-150 pick-up truck (truck) from Long McArthur Ford in Hall's hometown of Salina, Kansas. Hall financed the purchase price

through a note and security agreement contract (contract) that was subsequently assigned to Ford Credit. Under the contract, Hall committed to pay $27,964, plus 1.9% interest, in 72 monthly installments of $438.17, with the first payment due February 11, 2007. Hall's other contractual obligations included a requirement that he keep the truck in good condition and a requirement that he maintain physical damage insurance on the truck that would cover the remaining balance on the note (gap insurance). Through the contract, Ford Credit obtained a security interest in the truck.

Some 9 months after purchasing the truck, on September 30, 2007, Hall and his wife filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. In the bankruptcy documents, Hall claimed the truck as exempt property, identified Ford Credit as a secured creditor which was owed $27,549, and listed the truck's value at $20,000, *i.e.*, Ford Credit was undercollaterized by $7,549.

In October 2007, Hall moved to Kearney, Missouri. That same month, Ford Credit sent a letter to Hall's attorney requesting a reaffirmation agreement whereby Hall's personal contractual obligations to Ford Credit would not be discharged in the bankruptcy. Ford Credit opined that Hall's voluntary bankruptcy filing constituted a default under the security agreement and that if Hall did not reaffirm the debt, Ford Credit would suffer a "significant impairment of the prospect of payment, performance or realization of the collateral under K.S.A. 16a-5-109(2)." Ford Credit sent two more similar letters to Hall's attorney in November. Hall concedes that he received the letters, but he declined to execute a reaffirmation agreement.

On January 15, 2008, Hall obtained a discharge in bankruptcy, effectively terminating his personal liability to Ford Credit on the note and contract. However, Ford Credit retained its lien on the truck.

After discharge, Hall continued to make the required monthly payments. He claims in this proceeding that he also continued to maintain the required insurance and to keep the truck in good condition. Despite the continued payments, Ford Credit attempted to repossess the truck.

In response, Hall filed a petition in Saline County District Court alleging violations of the Kansas Consumer Protection Act and requesting an order preventing Ford Credit from attempting to repossess the truck. In a July 2008 amendment to the petition, Hall added a claim that Ford Credit was in violation of the UCCC provision in K.S.A. 16a-5-109. Ford Credit filed answers and counterclaims to those claims, denying that Hall was entitled to relief and seeking a determination that Hall was in actual default under both the terms of the contract and under the UCCC.

The matter was tried to the court on June 26, 2009. On August 3, 2009, the district court made its ruling on the record, and on October 27, 2009, the court filed a Journal Entry in which it denied Hall's claim for declaratory judgment and injunctive relief and which granted Ford Credit declaratory judgment "on its claim that under the facts of this case, [Hall] is in default under the terms of the retail installment contract and the Kansas Uniform Consumer Credit Code." The court also granted judgment in favor of Ford Credit on Hall's consumer protection claim. With respect to the UCCC claim, the Journal Entry included the following recitations:

"7. Factors that demonstrate significant impairment in the present case include (a) Plaintiff's filing of a Chapter 7 petition for bankruptcy; (b) the discharge in bankruptcy of Plaintiff's debt and other duties and obligations owed to Defendant under the Contract; (c) Plaintiff's refusal to reaffirm his personal obligations under the Contract which would have cured the prospective default occurring as a result of the bankruptcy discharge; and (d) the fair market value of the Pickup being less than the debt it secures.

"8. Based upon these factors, Defendant has met its burden of showing by a preponderance of the evidence that even though the payments on the Contract are current, the prospect of payment, performance, or realization of collateral is significantly impaired, thereby rendering Plaintiff in default under subsection (2) of K.S.A. 16a-5-109."

Hall timely appealed to the Court of Appeals. We granted the parties' joint motion to transfer the appeal to this court.

## ENFORCEABLE DEFAULT

Hall does not contest that his filing of a bankruptcy petition constituted a default under the specific provisions of the contract, which included the following default provision:

"I. Default: You will be in default if:

    1. You do not make a payment when it is due; or

    2. You gave false or misleading information on your credit application relating to this contract; or

    3. Your vehicle is seized by any local, state, or federal authority and is not promptly and unconditionally returned to you; or

    4. *You file a bankruptcy petition* or one is filed against you; or

    5. You do not keep any other promise in this contract.

"If you do not cure the default where allowed by law, Creditor can exercise Creditor's rights under this contract and Creditor's other rights under the law." (Emphasis added.)

However, under this State's version of the UCCC, not all contractual default provisions are enforceable. The UCCC's default constraint is contained in K.S.A. 16a-5-109, which provides:

"An agreement of the parties to a consumer credit transaction with respect to default on the part of the consumer is enforceable only to the extent that

    (1) the consumer fails to make a payment as required by agreement; or

    (2) the prospect of payment, performance, or realization of collateral is significantly impaired; the burden of establishing the prospect of significant impairment is on the creditor."

The official comment to the provision explains the reason for limiting contractual default provisions and describes the two circumstances which might constitute default on an installment obligation:

"1. One of the vital terms of every consumer credit agreement is that which sets forth the criteria which will constitute default. By its nature 'default' is not a term that is negotiated by the parties—it is generally controlled by the creditor. It is appropriate, therefore, that its content and implications be confined by the law so as to prevent abuse. This section is intended to accomplish that.

"2. This section recognizes that there are two entirely distinct sets of circumstances which might constitute default on an installment obligation. The first and most common is the failure to pay an installment as required. A default of this type is susceptible of being cured by the consumer without impairing a continuing contractual relationship between the consumer and the creditor. See K.S.A. 16a-5-110. *The second type of default relates to behavior of the consumer which endangers the prospect of a continuing relationship. It may be insolvency,* illegal activity, or an impending removal of assets from the jurisdiction. *There must, however, be circumstances present which significantly impair the relationship.* . . . The burden of proof is on the creditor to justify action on a claim of default of this type." (Emphasis added.) K.S.A. 16a-5-109 (comment).

Ford Credit did not claim that Hall failed to pay a required installment. Therefore, to enforce the contractual default provision, Ford Credit had to establish that it fit within the significant impairment provision of K.S.A. 16a-5-109(2). Hall contends that Ford Credit did not carry that burden.

*Standard of Review*

This court has previously declared that "[w]hether an impairment is significant under K.S.A. 16a-5-109(2) is a question of fact," and when a district court determines that a creditor has met its burden to prove that such a significant impairment exists, this court reviews that decision for substantial competent evidence to support the district court's determination. *Johnson County Auto Credit, Inc. v. Green*, 277 Kan. 148, 153-54, 83 P.3d 152 (2004).

Perhaps an argument could be made that the determination of whether the facts of a particular case meet the statutory requirement for enforceability of a default provision is a question of law. However, the parties do not make that argument. Accordingly, we will apply the previously approved substantial competent evidence standard of review in this case.

*Analysis*

Hall's overarching argument is that Ford Credit's collateral position was not appreciably changed by the bankruptcy proceedings. In support, he relies in part on cases interpreting the bankruptcy code, quoting extensively from *In re Brock*, 23 Bankr. 998 (Bankr. D. D.C. 1982); *Lowry Federal Credit Union v. West*, 882 F.2d 1543, 1547 (10th Cir. 1989); and *In re Rowe*, 342 Bankr. 341 (Bankr. D. Kan. 2006).

Hall acknowledges that those cases are not binding upon this court but suggests they should persuade us that his bankruptcy filing does not justify Ford Credit's repossession of the truck while Hall is continuing to fully perform under the contract. As Ford Credit points out, Hall overlooks the rather significant factual distinction that in *Lowry* and *Rowe* the creditor did not establish that the value of the vehicle was considerably less than the remaining balance on the loan, as is the case here. *Lowry*, 882 F.2d at 1546

(no evidence that truck would depreciate more rapidly than the note's outstanding balance would be reduced); *Rowe*, 343 Bankr. at 350 ("there is no evidence that the secured party is not adequately secured").

Moreover, the developing bankruptcy law does not advance Hall's argument that we should ignore or minimize the fact that he refused to reaffirm his debt in the bankruptcy proceeding. When a debtor files a Chapter 7 bankruptcy and possesses a vehicle which is securing a purchase money loan, the bankruptcy code provides the debtor with three options: (1) relinquish possession of the vehicle; (2) redeem the vehicle by paying off the loan; or (3) reaffirm the debt and remain personally liable to the creditor following the discharge in bankruptcy. See 342 Bankr. at 344. As explained in *In re Rowe*, *Lowry* "sanctioned the use of the 'fourth option' whereby a Debtor who at the time of filing was current on a debt secured by personal property could retain the property without either redeeming or reaffirming the debt." 342 Bankr. at 344. However, subsequent to the *Brock* and *Lowry* decisions, the bankruptcy code was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), which effectively eliminated the "fourth option." "BAPCPA now provides consequences for failure to redeem or reaffirm when a debtor is current on payments. They are termination of the stay and removal of the collateral from property of the estate, with the creditor's remedies upon expiration of the stay being those provided by state law." 342 Bankr. at 351. The fact that the bankruptcy code has strengthened the sanction for failing to comply with the mandate that the debtor redeem or reaffirm the debt in order to retain possession of the collateral counsels against ignoring the debtor's refusal to reaffirm the debt when considering whether the prospect of payment, performance, or realization of collateral is significantly impaired.

What the current bankruptcy code makes crystal clear is that the question of whether Ford Credit can repossess Hall's truck, following the lifting of the federal bankruptcy court's stay because of Hall's failure to relinquish, redeem, or reaffirm, is governed by Kansas law. This court is the final arbiter of that question, not-

withstanding any predictions which may have been set forth in *In re Rowe* as to how Kansas courts would apply our version of the UCCC. See 342 Bankr. at 350 ("The parties agree that it is not likely that a Kansas court would find 'significant impairment' under the circumstances of this case where Debtors are current on their payments, have stated their intent to remain current notwithstanding the filing of the bankruptcy proceeding, and there is no evidence that the secured party is not adequately secured."). In that context, both parties cite to the same three cases: *Green*, 277 Kan. 148; *Prairie State Bank v. Hoefgen*, 245 Kan. 236, 777 P.2d 811 (1989); *Medling v. Wecoe Credit Union*, 234 Kan. 852, 678 P.2d 1115 (1984).

In *Medling*, the district court permitted the repossession of a secured vehicle upon which payments were current, based principally upon the debtor's false or inconsistent statements to the creditor and the debtor's failure to meet with the creditor after agreeing to do so. This court found substantial competent evidence to support the district court's finding of default "on the basis [that] the prospect of payment, performance, or realization of the collateral was significantly impaired." 234 Kan. at 858-59. The lesson to be gleaned from *Medling* is that a significant impairment under K.S.A. 16a-5-109(2) may be created by a debtor's actions and inactions which endanger the prospect of a continuing relationship with the creditor, even though the debtor may be current on the note payments.

In *Hoefgen*, the district court permitted the repossession of a floral business. In affirming that decision, this court cited to 13 factors that affected the substantial impairment of collateral analysis. Although the opinion referred to the " 'spectre of bankruptcy,' " the reference was in the context of the creditor being undercollateralized, *i.e.*, where the value of the collateral was less than the indebtedness. 245 Kan. at 246. The case certainly does not support the notion that a debtor's filing of bankruptcy automatically creates a substantial impairment of collateral within the meaning of K.S.A. 16a-5-109(2).

In *Green*, this court again affirmed the district court's ruling on a prebankruptcy repossession. However, in that case the district

court had found that the creditor's repossession of the vehicle violated K.S.A. 16a-5-109. This court noted that a substantial competent evidence standard of review had been applied in *Medling* and *Hoefgen*, but that the district court in the *Green* case had made the negative finding that the creditor had failed to meet its burden of proving a significant impairment, which would carry an even less stringent standard of review. 277 Kan. at 153-54. Nevertheless, the *Green* court found that under either "deferential standard of review," the district court's determination that Auto Credit's repossession violated K.S.A. 16a-5-109 could be affirmed. 277 Kan. at 159.

Highly summarized, the facts in *Green* involved the Greens purchasing and financing a vehicle from Auto Credit, agreeing as part of the contract to keep the vehicle insured. The Greens apparently began to struggle with meeting their contract obligations. Auto Credit received notice from the insurance company that the debtor's coverage was to be cancelled for nonpayment of premiums. Shortly thereafter, Auto Credit entered into an extension agreement with the Greens which provided for the payment of past due interest and an extension of time to make the next installment payment. However, the extension agreement did not address the insurance issue. A little over a month later, the Greens failed to make a timely payment and Mrs. Green sent Auto Credit a handwritten note, explaining that the Greens' " 'financial situation is falling fast,' " and that the Greens had an appointment " 'concerning these issues.' " 277 Kan. at 150. Auto Credit apparently construed the note as an indication the Greens were going to file for bankruptcy and proceeded to repossess the vehicle.

Much of the discussion in *Green* focused on whether the debtors' failure to maintain insurance significantly impaired Auto Credit's collateral. The opinion noted that the district court had found that "after Auto Credit learned of the insurance problem, it executed an extension agreement and accepted five payments under the agreement." 277 Kan. at 159. The apparent suggestion is that Auto Credit must not have viewed the insurance cancellation as a collateral-impairing event, because it took no action to enforce that provision after learning of the default. Perhaps another way to

view those circumstances is that, by entering into the extension agreement, the creditor modified the original contract and waived the debtor's obligation to maintain insurance, so that the debtor's failure to have insurance was no longer a contractual default. Nevertheless, *Green* accepted the district court's assessment of the insurance cancellation, along with its findings "that the Greens had not concealed themselves or the collateral, that the collateral was not in physical jeopardy, that the Greens remained communicative with Auto Credit, and that the note from Ronda Green expressed no intent to pursue bankruptcy." 277 Kan. at 159.

Perhaps most significant to our present task, *Green* observed "that this court has reviewed a variety of factors considered by the district court to determine whether significant impairment existed. The factors in each case will vary, and we have not set out a comprehensive list." 277 Kan. at 157. The factors in this case do vary from those in our prior cases, with the most obvious difference being that, here, the debtor sought and obtained Chapter 7 bankruptcy protection.

In finding that Hall had defaulted under the contract by filing a bankruptcy petition, the district court made comments intimating that the mere filing of a bankruptcy petition might be sufficient to establish the requisite significant impairment under K.S.A. 16a-5-109(2). We disagree with that suggestion and reject the notion that the debtor's filing of a bankruptcy petition establishes, as a matter of law, that the prospect of payment, performance, or realization of collateral is significantly impaired. Circumstances might exist at the time of filing which would indicate that the debtor's continued performance under the installment contract is more likely than not.

Moreover, when the petition is filed, the possibility exists that debtor might choose to follow the bankruptcy code and perform one of the three permissible options with respect to secured personal property, *i.e.*, relinquish, redeem, or reaffirm. If the debtor relinquishes possession of the vehicle or redeems it by paying off the debt, the question of the continuing relationship between debtor and creditor is no longer an issue. If the debtor reaffirms the debt, the creditor's position has been unaffected by the bank-

ruptcy filing. In short, the creditor must show more than the filing of a bankruptcy petition.

In this case, there were more factors shown and relied upon by the district court. Specifically, Hall did not respond to Ford Credit's request for a reaffirmation of the debt in the bankruptcy proceedings. Instead, he proceeded to obtain a discharge of his personal liability on the note which carried an outstanding balance substantially in excess of the value of the collateral securing the note. After his bankruptcy discharge, Hall retained the possession, control, and enjoyment of the collateral, but Ford Credit was enjoined from contacting Hall about paying that portion of the debt which exceeded the value of the truck. See 11 U.S.C. § 524(a)(2) (2006) (discharge operates as an injunction against an act to collect, recover, or offset any discharged debt as a personal liability of the debtor).

Hall argues that Ford Credit's fears of significant impairment are only anticipatory in nature. He points to the fact that, since his discharge, he has performed all of his contractual obligations, and, at trial, he testified under oath that he intends to continue to faithfully perform under the contract. However, as noted, the bankruptcy code mandates a procedure for a debtor who wants to keep the secured personal property and continue to faithfully perform under the security agreement, *i.e.*, the debtor can reaffirm the debt. Hall does not explain why his current self-serving statement of intent should trump his refusal to formalize his commitment to full contract performance through a reaffirmation of the debt. Under Hall's "trust-what-I-say-today" method of reaffirmation, Ford Credit must accept the additional risk that Hall might change his mind at any time and unilaterally decide to terminate any part or all of his contract performance. Hall, on the other hand, has been relieved of all personal liability and is subject to no additional sanction for failing to fulfill his precatory assurance of performance.

If Hall chooses to terminate performance, Ford Credit will be left to salvage whatever it can from the truck in whatever condition it might be at the time. In that vein, the truck's value in relation to the remaining balance on the contract is an important factor. A creditor would be justified in believing that a debtor would ordi-

narily not gratuitously pay more for a vehicle than it is worth. Accordingly, the prospect of debtor's continued performance would be significantly impaired as a matter of economic reality where the note is substantially undercollaterized.

Hall contends that Ford Credit "is in no worse position than it occupied before the bankruptcy," arguing that, so long as he continues to pay as he promised to do, the value of the collateral compared to the debt amount is irrelevant. That argument misses the point. Obviously, the creditor is made whole if the contract is completed. The focus is on the prospects that Hall will, in fact, continue to pay as promised to the completion date and if he does not, whether the collateral is likely to have been impaired.

Moreover, before bankruptcy, Ford Credit held an installment purchase note upon which debtor was personally liable. The debtor's discharge without a reaffirmation of personal liability has effectively transformed the installment purchase contract into a month-to-month lease, unilaterally terminable at will by the debtor. One would be hard-pressed to argue that Ford Credit's position has not worsened.

Hall also suggests that his situation is indistinguishable from the circumstance where the creditor repossesses a vehicle that is valued at less than the debt amount, and the debtor responds by filing bankruptcy to discharge the amount of deficiency on the note. The analogy is faulty. As described above, Hall's utilization of the now-defunct "fourth option" is akin to a nonbinding reaffirmation of the contract. In contrast, the prebankruptcy repossession followed by a discharge of the note deficiency effects the same result as if Hall had elected the relinquishment option in his bankruptcy proceeding. The debtor no longer has possession and control over the vehicle or the benefit of its use, whereas the creditor has liquidated the amount of its loss and avoided the risk that the gap between vehicle value and debt amount will widen. Likewise, the creditor realizes the value of its collateral immediately, rather than looking in the mailbox each month to see whether the debtor has chosen to make that month's payment.

A final factor discussed by the district court, but not specifically listed in the journal entry, is the impact upon the creditor/debtor

relationship caused by the discharge injunction of 11 U.S.C. § 524(a)(2). Ford Credit argues that the injunction cut off its ability to communicate with Hall and thereby impaired its ability to monitor whether Hall was performing all of his obligations with regard to the collateral. Hall counters with two arguments. First, he contends that Ford Credit is not precluded from communicating with his counsel. However, when a business relationship has devolved to the point that the parties to the contract are only able to communicate through attorneys, one would have to concede that the prospect of a continuing relationship has been endangered to some extent.

Next, Hall takes exception to Ford Credit's characterization of the injunction as foreclosing all communications, correctly pointing out that 11 U.S.C. § 524(a)(2) speaks only about an act to collect a discharged debt as a personal liability of the debtor. Accordingly, Hall contends that Ford Credit can still communicate with him on matters relating to the property on which it maintains a lien. While that distinction may be valid, the situation creates a considerable risk for the creditor that any communication with the debtor might be construed as relating to the debtor's personal liability, especially where the note is undercollateralized. Obviously, the discharge injunction imposes a constraint on the continuing relationship between debtor and creditor.

Considering all of the factors present in this case, we hold that there was substantial competent evidence to support the district court's determination that the prospect of payment, performance, or realization of collateral was significantly impaired so that Hall's default was enforceable under K.S.A. 16a-5-109(2).

Affirmed.